ACCEPTED
07-17-00020-CV
SEVENTH COURT OF APPEALS
AMARILLO, TEXAS
7/5/2017 4:12 PM
Vivian Long, Clerk

*Oral Argument Conditionally Requested*

## No. 07-17-00020-CV

FILED IN
7th COURT OF APPEALS
AMARILLO, TEXAS

7/5/2017 4:12:31 PM

VIVIAN LONG
CLERK

**In The Court Of Appeals
For The Seventh District Of Texas
Amarillo, Texas**

# MAHMOUD ABDALLA

**v.**

# FARMERS INSURANCE EXCHANGE

On Appeal From the 153rd Judicial District Court
Tarrant County, Texas, Cause No. 153-269720-13

# APPELLEE'S BRIEF

Scot G. Doyen – SBN 00792982
*sdoyen@ds-lawyers.com*
Alasdair Roberts – SBN 24068541
*aroberts@ds-lawyers.com*
DOYEN SEBESTA, LTD., L.L.P.
450 Gears Road, Suite 350
Houston, Texas 77067
Telephone: 713-580-8900
Facsimile: 713-580-8910

**ATTORNEYS FOR APPELLEE
FARMERS INSURANCE EXCHANGE**

# TABLE OF CONTENTS

ISSUES PRESENTED .................................................................................viii

STATEMENT OF FACTS ...............................................................................1

STANDARD OF REVIEW ..............................................................................6

ARGUMENT ...............................................................................................8

I.   The Appraisal Award was not Rendered as the Result of Mistake or Accident .......................................................................................8

II.  Timely Payment of the Appraisal Award Precludes Contractual Liability .................................................................................... 14

III. Tendering Payment of an Appraisal Award Estops a Breach of Contract Cause of Action Regardless of Whether Payment was Accepted................................................................................... 15

IV.  Timely Payment of the Appraisal Award Precludes Chapter 542 Liability .................................................................................... 16

V.   Timely Payment of the Appraisal Award and Lack of Independent Injury Precludes Extra-Contractual Liability............................ 19

CONCLUSION AND PRAYER.........................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Amine v. Liberty Lloyds of Tex. Ins.,.*
No. 01-06-00396-CV, 2007 WL2264477 (Tex.App.—Houston [1st Dist.]
2007, no pet.) ................................................................................................ 16, 17

*Anderson v. Am. Risk Ins. Co., Inc.,*
2016 WL3438243 (Tex.App.—Houston [1st Dist.] 2016, no pet.).....................20

*Barnes v. Western Alliance Ins. Co.*
844 S.W.2d 264 (Tex.App. —Fort Worth 1992, writ dism'd by agr.) ................. 9

*Breshears v. State Farm Lloyds,*
155 S.W.3d 340 (Tex.App.—Corpus Christi 2004, pet. denied)............. 14,16,20

*City of Keller v. Wilson,*
168 S.W.3d 802 (Tex. 2005) .............................................................................. 7

*Davis v. Nat. Lloyds Ins. Co.,*
484 S.W.3d 459 (Tex.App.—Houston [1st Dist.] 2015, pet. filed) ......................19

*Douglas v. State Farm Lloyds*
37 F.Supp.2d 532 (S.D. Tex. 1999) ...................................................................20

*Fisch v. Transcon. Ins. Co.,*
356 S.W.2d 186 (Tex. Civ. App. —Houston 1962, writ ref'd n.r.e.)...................10

*Franco v. Slavonic Mut. Fire Ins.,*
154 S.W.3d 777 (Tex.App.—Houston [14th Dist.] 2004, no pet.) .....................14

*Garcia v. Lloyds,*
514 S.W.3d 257 (Tex.App.—San Antonio 2016, pet.
denied)............................................................................ 8,9,10,11,12,16,17

*Gardner v. State Farm Lloyds*,
  76 S.W.3d 140 (Tex.App.—Houston [1st Dist], no pet.) .........................................14

*In re Slavonic Mut. Fire Ins. Ass'n*,
  308 S.W.3d 556 (Tex.App.—Houston [14th Dist] 2010, no pet.).................. 16,17

*JM Walker LLC v. Acadia Ins. Co.*
  No. 09-10562, 2009 WL4884943 (5th Cir. Dec. 18, 2009) ...................................12

*Mack Trucks, Inc. v. Tamez*,
  206 S.W.3d 572 (Tex. 2006).......................................................................................... 7

*MLCSV10 v. Stateside Enter. Inc.*,
  866 F.Supp.2d 691 (S.D. Tex. 2012)...........................................................................12

*Nat. Security Fire & Cas. Co. v. Hurst,*
  No. 14-15-00714-CV, 2017 WL 2258243 (Tex. App.—Houston [14th Dist.]
  2017, no pet. h.) ....................................................................................... 15,16,21,23

*Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*,
  877 S.W.2d 872 (Tex.App.—San Antonio 1994, no writ) ..........................6,8,9,13

*Republic Ins. v. Stoker,*
  903 S.W.2d 338 (Tex. 1995).........................................................................................19

*Scottish Union & Nat'l Ins. Co. v. Clancy*,
  71 Tex. 5, 8 S.W. 630 (Tex. 1888)...............................................................................14

*Spicewood Summit Office Condo. Ass'n, Inc. v. First Lloyd's Ins. Co.*,
  287 S.W.3d 461 (Tex.App.—Austin 2009, pet. denied).........................................20

*Texas Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.*,
  324 S.W.3d 305 (Tex.App.—El Paso 2010, pet. denied).......................................20

*Transp. Ins. Co. v. Moriel*,
  879 S.W.2d 10 (Tex. 1994).............................................................................................19

*USAA Tex. Lloyds Co. v. Menchaca,*
   No. 14-07121, 2017 WL1311752 (Tex. 2017) ............................................. 20,22,23

*Valence Operating Co. v. Dorsett,*
   164 S.W.3d 656 (Tex. 2005) ..................................................................................... 6

*Wells v. Am. States Preferred Ins. Co.,*
   919 S.W.2d 679 (Tex.App.—Dallas 1996, writ denied) ......................................14

**Statutes**

TEX. INS. CODE §541.151 .............................................................................................21
TEX. INS. CODE §542.056(a) .......................................................................................18
TEX. INS. CODE §542.058 ......................................................................................17,18
TEX. INS. CODE §542.060 ...........................................................................................18

**Rules**

TEX. R. CIV. P. 166a(c) .................................................................................................. 6

# RECORD REFERENCES

CR2        Clerk's Record page 2

# STATEMENT OF THE CASE

*Nature of the Case:*

Property insurance suit filed by Plaintiff Mahmoud Abdalla against his insurer, Farmers Insurance Exchange, claiming damages after a water discharge event (*CR5-23*). Suit was filed prior to the completion of the appraisal process invoked by Plaintiff.

*Course of Proceedings:*

Defendant moved for summary judgment twice based on its timely payment of an appraisal award. The 153rd Judicial District Court of Tarrant County, Texas, the Hon. Susan Heygood McCoy presiding, granted summary judgment after three hearings on the motion (*CR305, 512, 641*).

*Trial Court's Disposition:*

The trial court granted summary judgment on the breach of contract cause of action on April 6, 2016 (*CR305*). Subsequently the trial court granted summary judgment on Plaintiff's causes of action for breach of the common law duty of good faith and fair dealing and negligent misrepresentation on September 22, 2016 (*CR512*). The trial court granted summary judgment on all remaining causes of action and awarded Defendant costs of court in the amount of $1,276.10 on December 5, 2016 (*CR641*).

# ISSUES PRESENTED

Whether the trial court erred in refusing to vacate the appraisal award.

Whether the trial court erred in granting Appellee's motion for summary judgment.

# STATEMENT REGARDING ORAL ARGUMENT

Appellee believes this case can be decided on the briefs without oral argument. Nevertheless, Appellee would be pleased to present oral argument should the Court request it.

# STATEMENT OF FACTS

Appellant was insured under a Business Owners Policy issued by Appellee (*CR334-453*). The policy also includes an appraisal clause, which was invoked by the Appellant when a disagreement arose over the dollar amount of damages to the property (*CR465-66*). The appraisal clause is as follows:

**D. Appraisal**

The **Appraisal Property Loss Condition** is replaced by the following:

**APPRAISAL**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.

Each party will:
1. Pay its chosen appraiser; and
2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal:
a. You will retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Loss Condition; and
b. We will still retain our right to deny the claim.

(*Tab A, CR438-439*)

On February 21, 2012 the Appellant, Mahmoud Abdalla, suffered a water leak at his tire warehouse in Arlington, Texas (*CR459*). An insurance claim was reported to Appellee that same day (*CR459*). Appellee assigned

1

the claim to an adjuster named Tonya Stillwell who proceeded with investigation of the claim (*CR459*).

Over the course of Appellee's investigation it issued $264,829.29 in payments to Appellant for covered losses at the property (*Tab C, CR468*).

On March 28, 2013, Appellant invoked the appraisal process and designated Tony Siahpush as his appraiser (*CR465*). Appellee designated Kyle Albright as its appraiser (*Tab C, CR468*). Relevant dates following invocation of appraisal are as follows:

1. Appellant filed the instant lawsuit on December 19, 2013 (*CR5-23*);

2. Appellee answered the lawsuit on January 12, 2014 (*CR24-26*);

3. On May 30, 2014 the trial court conducted a conference with the attorneys regarding resolution of the case and on July 2, 2014 issued an order appointing Judge Charles Bleil as the umpire (*CR642*);

4. On October 8, 2014 Judge Bleil issued his "Award of Umpire" (*Tab B, CR27-29*).

Judge Bleil's award reflects that both sides' appraisers had completed their assignments, and that he was submitting his award to conclude the appraisal process (*Tab B, CR27*). The award attached the "Appraisal Award" ("Award") prepared by Appellee's appraiser, Kyle Albright, and stated:

2

> This appraisal is evidenced by the document attached to this award.
>
> It is the Umpire's considered opinion that the Albright appraisal of an actual cash value loss amount of $345,664.21 (three hundred forty-five thousand, six hundred sixty-four dollars and twenty-once cents) is the more sound and well supported appraisal. Accordingly, the Umpire hereby award the sum of money to make whole the damages caused to the subject property.
>
> (*Tab B, CR27-28*).

The Award of Umpire was signed by Judge Bleil and Mr. Albright, which made the award binding per the terms of the policy (*Tab A, CR438-439*).

On October 15, 2014, seven days after the Award of Umpire was issued, Appellee tendered payment to Plaintiff for $76,125.81 (building coverage) and $5,855.98 (business personal property coverage) which reflected the actual cash value amounts owed under the Award of Umpire less depreciation, policy deductible, and prior payments (*Tab C, CR468-470*). The letter accompanying the payments provided the following concise breakdown of the amounts tendered:

3

Here is an explanation of the settlement:

| Line of Coverage | Building | Business Personal Property |
|---|---|---|
| Replacement Cost | $340,688.03 | $23,314.19 |
| Less: Depreciation | $16,191.76 | $N/A |
| Actual Cash Value | $324,496.27 | $N/A |
| Less: Policy Deductible | $1,000.00 | $N/A |
| Settlement Amount | $323,496.27 | $23,314.19 |
| Less: Prior Payments | $247,370.46 | $17,458.83 |
| Amount | $76,125.81 | $5,855.98 |

(*Tab C, CR468*)

The deadline under the insurance policy for Appellee to pay an appraisal award is five business days after an appraisal award has been made (*Tab A, CR440*). Payment was timely tendered per the terms of the policy, as seven days cannot elapse with more than five business days elapsing within the same time period.

Dissatisfied with the award, Appellant moved for vacation of the appraisal award of October 27, 2014 on the basis that the Award of Umpire was a product of mistake (*CR30-37*). The trial court entertained the motion and denied it on April 6, 2016 (*CR304*).

Having satisfied its duties to Appellant under the Policy, Appellee moved for summary judgment on October 21, 2015 and argued that the

4

timely payment of the Award meant there was no genuine issue of material fact on Plaintiff's causes of action for breach of contract, breach of the duty of good faith and fair dealing, and violations of Chapters 541 and 542 of the Texas Insurance Code (*CR50-201*). The trial court granted summary judgment on Appellee's breach of contract cause of action on April 6, 2016 and re-opened discovery with regard to the extra-contractual causes of action (*CR305*).

Following the trial court's April 6, 2016 rulings, Mr. Abdallah was presented for deposition and testified that he was only seeking damages for amounts owed under the insurance contract (*CR504*). Having established that there was no independent injury to Appellant that would serve as a basis for his extra-contractual causes of action, Appellee again asserted a motion for summary judgment on all remaining causes of action (*CR312-506*).

On August 25, 2016 a hearing was held on Appellee's motion for summary judgment and the Court issued an order granting summary judgment on Appellee's causes of action for breach of the duty of good faith and fair dealing and negligent misrepresentation (*CR512*). At the same hearing, the trial court withheld ruling on the remaining causes of action until Tonya Stillwell, Appellee's claims adjuster, could be deposed (*CR643*).

5

Ms. Stillwell was presented for deposition on September 15, 2016, and Appellee reset its motion for summary judgment for hearing on November 11, 2016 (*CR527-49*). The trial court granted summary judgment on all remaining causes of action and on December 5, 2016 the Court rendered judgment that Appellant take nothing and that Appellee recover its costs of court in the amount of $1,276.10 (*CR641*).

## STANDARD OF REVIEW

When examining an appraisal award every reasonable presumption will be indulged to sustain the award. *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex.App.—San Antonio 1994, no writ). An award entered by the umpire and appraisers can only be disregarded if: (1) the award was made without authority; (2) the award was issued as a result of fraud, accident, or mistake; or (3) the award was not made in substantial compliance with the terms of the policy. *Id.* at 875-76.

The trial court's summary judgment is reviewed de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). On its traditional motion for summary judgment, Appellee must show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Tex. R. Civ. P. 166a(c)*.

6

A no evidence motion for summary judgment is functionally identical to a motion for directed verdict. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). Appellate courts view the evidence in the light most favorable to the non-movant, but do not disregard evidence that supports the motion. *See City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005).

## SUMMARY OF ARGUMENT

The trial court properly denied the motion to vacate the appraisal award, then properly granted summary judgment on the causes of action asserted by the Appellant.

The Appellant invoked the appraisal provision of his policy, the Award of Umpire was not the result of mistake, accident, or fraud, and Appellee promptly and timely tendered payment of the amount owed. The timely payment of the Award precludes liability under the contract and established that Appellant had no further right to recovery of policy benefits. Without any further right to policy benefits, Appellant has no independent injury to serve as a basis for damages under extra contractual causes of action.

The evidence submitted by Appellee to the trial court shows that there was no genuine issue of material fact as to whether it failed to timely tender

7

payment of the Award, or whether Appellant suffered an independent injury that would support extra-contractual causes of action.

Alternatively, the evidence submitted to the trial court by Appellant was legally and factually insufficient to support a breach of contract, or extra-contractual causes of action.

The judgment of the trial court must be affirmed.

# ARGUMENT

## I.    The Appraisal Award was not Rendered as the Result of Mistake or Accident

An appraisal award made pursuant to the provisions of an insurance policy is binding and enforceable. *Garcia v. Lloyds*, 514 S.W.3d 257, 264 (Tex.App.—San Antonio 2016, pet. denied); *Providence*, 877 S.W.2d at 875. The burden to set aside an appraisal award lies squarely upon the Appellant. *Garcia*, 514 S.W.3d at 264-65. There are three grounds upon which an appraisal award can be set aside:

1.  The award was made without authority;

2.  The award was made as the result of fraud, accident, or mistake; or

8

3. The award was not made in compliance with the requirements of the policy.

*Id.* at 265; *Providence*, 877 S.W.2d at 875-76.

Appellant argues that the Award is the result of mistake or an accident. The law in Texas is clear that an appraisal award may only be set aside on the basis of accident or mistake "upon a showing that the award does not speak the intention of the appraisers." *Garcia*, 514 S.W.3d at 269 (*internal citations omitted).* Mistake is further defined as "a situation where the appraisers and umpire were laboring under a mistake of fact by which their appraisal award was made to operate in a way they did not intend, such that the award does not speak the intention of the appraisers and umpire…" *Barnes v. Western Alliance Ins. Co.*, 844 S.W.2d 264, 268 (Tex.App.—Fort Worth 1992, writ dism'd by agr.).

Appellant has offered no evidence that the Award failed to reflect the intent of the appraisers or the umpire. Appellant relied predominantly on the Affidavit of Max Judge which detailed differences between his appraisal and that of Mr. Albright's, but wholly failed to identify the intent of the appraisers or the umpire. (*CR39-41*). The intent of Judge Bleil and Appellee's appraiser is clear in the Award, and the Award was consistent with that intent:

9

It is the Umpire's considered opinion that the Albright appraisal of an actual cash value loss amount of $345,664.21 (three hundred forty-five thousand, six hundred sixty-four dollars and twenty-once cents) is the more sound and well supported appraisal. Accordingly, the Umpire hereby award the sum of money to make whole the damages caused to the subject property.

(*Tab B, CR27-28*).

The law recognizes that mere disagreements between the appraisers and the umpire do not mean the Award was the result of mistake or accident, and that a decision by an umpire to use one estimate over another does not establish mistake or accident. *See Garcia*, 514 S.W.3d at 270.

The affidavit takes issue with Defendant's appraiser's method of calculating demolition and excavation activities (*CR33, 39-40, Appellant Br. 12*). The affidavit also states "I believe I have adequately address [sic] the issue of erosion in my estimate and I don't believe Mr. Albright did." (*CR33, 40, Appellant Br. 12*). The Policy requires the appraisers to submit their differences to the umpire, so in instances where an umpire is appointed a disagreement between the appraisers is a necessity. In fact, the whole purpose of the Court's appointment of an Umpire is to resolve disagreements between the respective appraisers. *Fisch v. Transcon. Ins. Co.*, 356 S.W.2d 186, 189 (Tex. Civ. App.—Houston 1962, writ ref'd n.r.e.). If appraisers did not fail to agree, there would be nothing to submit to the umpire and nothing upon which he could act. *Id.*

10

Appellant's argument that disagreement between the appraisers constitutes a mistake contradicts the purpose of appointing an umpire.

The Affidavit argues that the Award improperly relies upon an engineering report created by Rimkus Engineering and disregards the findings of an engineering report prepared by Syntec. (*CR32, 39-40*, *Appellant Br. 11*). The *Garcia* court examined the issue of whether a difference in scope between an appraisal award and pre-appraisal estimates is evidence the award does not reflect the appraiser's intent and held that the policy's appraisal clause did not specify the manner in which the appraisers were to set the amount of loss nor did it require the appraisers to rely on or refer to prior damage estimates. *See Garcia*, 514 S.W.3d at 266-67. The same logic applies here. There is nothing in the Policy's appraisal clause that dictates the method the appraisers and umpire should employ in determining the amount of the loss, nor is there an instruction to consider or disregard estimates or engineering reports previously created by either side (*Tab A, CR438-439*). Like the appraisers in *Garcia*, Judge Bleil's decision to adopt or disregard portions of an engineer's report does not mean his Award was rendered as the result of an accident or mistake.

Plaintiff's argument that an umpire's decision to adopt the recommendations from one appraiser over another constitutes mistake is nonsensical. The *MLCSV10* court confronted whether an appraisal award should be set aside on the basis of mistake when one appraiser's estimate was allegedly not based upon a reliable methodology and whether the umpire's selection of one appraiser's estimate over another constituted mistake. The court determined that:

> An umpire must often choose between two competing values. McCool's [the umpire's] decision to use Lochridge's [one appraiser's] estimates rather than Haden's [the other appraiser] does not mean that the appraisal award resulted from accident or mistake.

*Garcia*, 514 S.W.3d at 269 (quoting *MLCSV10 v. Stateside Enter., Inc.,* 866 F. Supp. 2d 691, 702 (S.D. Tex. 2012).

Similarly, in *JM Walker*, the court determined that a difference in roof measurements did not constitute a mistake because the insured provided no evidence that the award did not speak to the umpire's intent. *JM Walker LLC. v. Acadia Ins. Co.,* No. 09-10562, 2009 WL4884943, at *746-47 (5th Cir. Dec. 18, 2009). The Court stated, "[a]n umpire often must choose between two competing values, and LaFluer's decision to go with Gillespie's measurement, rather than Austin's does not mean his award was premised on a mistake." *Id*. The facts in this particular case are even less compelling because there isn't

even an allegation of a disagreement regarding an objectively verifiable fact (such as a roof measurement). In the present case, there was purely a difference of opinion between the appraisers that was resolved by the umpire. This is exactly how the appraisal process is designed to work.

The points raised by Appellant exhibit no more than a dispute between his own appraiser and the Appellee's appraiser and the Umpire concerning the value of damages to the property based on the reliance of certain evidence at the expense of other evidence. This is not evidence of mistake or accident in the appraisal process, the Award is clear as to the intent of Judge Bleil, he considered Mr. Albright's appraisal to be a sounder and better supported appraisal and the Award issued was consistent with that decision. Appellant has not carried his burden to set aside the appraisal award because he has presented no evidence of mistake, accident, or contrary intent. Every reasonable presumption will be indulged to sustain the Award, and there is ample evidence showing the Award reflected the intent of Judge Bleil (*Tab B, CR27-29*). *Providence*, 877 S.W.2d at 875. Therefore, the Trial Court was correct in denying the motion to vacate the appraisal award.

## II. Timely Payment of the Appraisal Award Precludes Contractual Liability

When an insurer participates in the appraisal process and pays the amount set by the appraisers and umpire there is no breach of contract. *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex.App.—Corpus Christi 2004, pet. denied); *Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 787 (Tex.App.—Houston [14th Dist.] 2004, no pet.). That is because the policy's appraisal provision estops a party from contesting the issue of damages in a breach of contract dispute leaving only a liability question for the court. *Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (1888); *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683-84 (Tex.App.—Dallas 1996, writ denied)(internal citations omitted); *et al*. Under Texas law, a contract claim does not survive the insurer's payment of an appraisal award. For instance, in *Franco,* the insureds alleged after invoking appraisal that the insurer's payment of the appraisal award did not defeat their breach of contract cause of action. *Franco*, 154 S.W.3d at 786*.* The appellate court disagreed, holding that because the insurer paid the appraisal award, the insureds were estopped from maintaining a breach of contract claim against the insurer. *Id.; see also Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 143-44 (Tex.App.—Houston [1st Dist.]

14

2002, no pet.). Simply put, compliance with the contractual appraisal award negates any claim for breach of contract as a matter of law.

Like the insurer in *Franco*, Farmers fully participated in the appraisal process and timely tendered payment of the Award (*Tab B, CR27-29*, *Tab C, 468-473*). There is no genuine issue of material fact as to whether payment was tendered, or whether the tender was timely. The record shows that the Award was dated October 8, 2014 and payment was tendered on October 15, 2014 (*Tab B, CR27-29*, *Tab C 468-473*). Appellant did not address the breach of contract cause of action other than to argue that the award should be vacated due to accident or mistake. *Appellant Br. 14.* Viewing the evidence in the light most favorable to Appellant does not create a genuine issue of material fact because it is undisputed that Appellee fully participated in and timely tendered payment of the Award (*Tab B, CR27-29*, *Tab C 468-473*).

**III. Tendering Payment of an Appraisal Award Estops a Breach of Contract Cause of Action Regardless of Whether Payment was Accepted**

Even when an insured does not accept payment of an appraisal award, tender of the amount owed pursuant to the conditions of the appraisal clause estops an insured from asserting a breach of contract cause of action. *Nat. Security Fire & Cas. Co. v. Hurst*, --S.W.3d--, No. 14-15-00714-CV, 2017 WL

2258243 *3-4 (Tex.App.—Houston [14th Dist.] 2017, no pet. h.). (internal citations omitted); *See Garcia*, 514 S.W.3d at 271. In response to Appellee's first motion for summary judgment, Appellant argued that the Award needed to be vacated and that he had not negotiated the payment tendered (*CR229*). But the law is clear that payment does not have to be accepted to preclude a breach of contract cause of action. *Id.* Further, Appellant introduced no evidence of mistake or accident that justifies the vacation of the Award.

Accordingly, as a matter of law, there is no breach of contract, and the Trial Court's summary judgment on Appellant's breach of contract claim was properly rendered.

## IV. Timely Payment of the Appraisal Award Precludes Chapter 542 Liability

Full and timely payment of an appraisal award precludes liability under Chapter 542.[1] There is no provision in Chapter 542 that establishes a deadline for payment of an appraisal award. *In re Slavonic*, 308 S.W.3d at 563, n.5*.* In *Breshears* the payment of the appraisal award was tendered "[w]ithin thirty

---

[1] *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563-64 (Tex. App.—Houston [14th Dist.] 2010, no pet.)); *See Amine v. Liberty Lloyds of Tex. Ins. Co.,* No. 01–06–00396–CV, 2007 WL 2264477, *4 (Tex.App.-Houston. [1st Dist.] Aug. 9, 2007, no pet.) (mem. op.) (holding that where insurer makes timely payment pursuant to an appraisal award, there is no violation of the code's prompt payment deadlines); and *Breshears,* 155 S.W.3d at 344–45 (holding that insurer did not breach contract and insureds were not entitled to payment of penalty, even though final payment was delayed until completion of appraisal process).

16

days" of the umpire's decision and the Court found no basis for extending 542 liability to the insurer. *Breshears*, 155 S.W.3d at 342, 344-45. In *Hurst*, the insurer tendered payment of the appraisal award 30 days after the issuance of the award and the Court held that the payment was issued "well within the timeliness requirements of section 542.058." *Hurst,* 2017 WL 2258243 at *5.* The *Amine* Court considered whether there was any violation of the prompt payment of claims act and adopted the reasoning of the *Breshears* Court in holding that timely payment of an appraisal award precludes an award of penalty interest as a matter of law. *Amine*, 2007 WL 2264477 at *4.* In *Garcia,* the insured argued on appeal that notwithstanding a valid appraisal award, an insurer should still be liable for prompt payment of claims violations that occurred before the appraisal clause was invoked. *Garcia*, 514 S.W.3d at 274. The *Garcia* Court rejected this argument and relied on *In re Slavonic*, *Breshears*, et al. in holding that timely payment of an appraisal award precludes imposition of penalties under Chapter 542. *Id.* at 275 (internal citations omitted).

Even if the law dictated that an insurer could be liable under Chapter 542 for violations that occurred prior to the invocation of appraisal, Appellant would not be liable in this case. Appellant argues that Appellee did not accept or reject the claim until March 20, 2012 which was greater than 15 business

17

days after the claim was reported on February 22, 2012. *Appellant Br.* 19. However, Appellant ignores that the 15 business day deadline to accept or reject a claim does not arise until after the insurer has "all items, statements and forms required by the insurer to secure final proof of loss." *Tex. Ins. Code §542.056(a)*. Appellant has entered no evidence into the record to establish the date Appellant received the necessary information to secure final proof of loss. Ms. Stillwell testified in her deposition that the date Appellant received all items, statements, and forms required to secure final proof of loss was on October 9, 2014 when the Award was received by Appellant (*CR547*).[2] Therefore, the 15 business day period under Section 542.056 and the 60 day time period under Section 542.058 of Chapter 542 did not begin running until October 9, 2014 and payment was then tendered six days later (*Tab B, CR27-29, Tab C, and CR468-473*). *Tex. Ins. Code §542.056(a)* and *§542.058.* Therefore, liability and a right to damages under Section 542.060 would not arise even if appraisal had not been invoked. *Tex. Ins. Code §542.060.* There is no evidence in the record that Appellee can rely on to create a genuine issue of material fact

---

[2] This evidence was presented to the trial court by Appellant in its Reply to Plaintiff's Amended Response to Defendant Farmers Insurance Exchange's Motion for Summary Judgment (*CR636-638*).

as to whether October 9, 2014 was the date upon which Appellant had secured final proof of loss and could accept the claim and issue payment.

Upon the issuance of the Award of Umpire, Defendant tendered payment of the award seven days later (*Tab B, CR27-29, Tab C, and CR468-473*). As a matter of law, there is no Chapter 542 liability because Appellee timely paid the Award and there is no evidence in the record that Appellee can point to that creates a genuine issue of material fact as to the timeliness of payment.

## V. Timely Payment of the Appraisal Award and Lack of Independent Injury Precludes Extra-Contractual Liability

There can be no claim for bad faith absent a breach of the underlying insurance contract. See *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Davis v. Nat. Lloyds Ins. Co.*, 484 S.W.3d 459, 474 (Tex.App. – Houston [1st Dist.] 2015, pet. filed). Further, for conduct to evolve from a mere breach of contract to bad faith, the breach of contract has to be accompanied by an independent tort. *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 17 (Tex.1994). When a plaintiff "joins claims under the Texas Insurance Code and DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory

19

claim."[3]  Appellee moved for summary judgment on these extra-contractual causes of action on the grounds that there was no underlying breach of the insurance contract and that there was no evidence or genuine issue of material fact as to the existence of an independent injury (*CR317-318, 508-509*, and *634-635*).

There was no underlying breach of contract because Appellant invoked the policy's appraisal clause, and Appellee timely paid the Award. *Breshears*, 155 S.W.3d at 344, *et al.*; (*Tab B, CR27-19, Tab C, and CR468-473*).

Upon payment of the Award Appellant was no longer entitled to any benefits under the policy that could serve as a basis for damages under an extra-contractual theory of recovery.  Without a basis for further recovery of policy benefits, Appellant's only avenue to damages under an extra-contractual cause of action is by establishing an independent injury. *USAA Tex. Lloyds Co. v. Menchaca*, ___S.W.3d ___ 2017 WL 1311752 *4-12 (Tex. 2017).

---

[3] *Anderson v. Am. Risk. Ins. Co., Inc.*, 2016 WL 3438243 *7 (Tex.App.—Houston [1st Dist.] 2016, no pet.).  *See Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc., 324 S.W.3d 305, 317 (Tex. App.—El Paso 2010, pet. denied); Spicewood Summit Office Condo. Ass'n, Inc. v. Amer. First Lloyd's Ins. Co.*, 287 S.W.3d 461, 468 (Tex.App.—Austin 2009, pet. denied) quoting *Douglas v. State Farm Lloyds*, 37 F.Supp.2d 532, 544 (S.D.Tex. 1999) ("[W]hen an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either of the statutory claims.").

There was no evidence of an independent injury in this case. The Appellant had an opportunity to present evidence of an independent injury during his deposition but confirmed that his complaint against Appellee was that he was not paid amounts owed to him under the policy (*CR504*). Underpayment is not an injury independent of damages under the policy. *Hurst*, 2017 WL 2258243 at *6. Even faced with the opportunity to develop evidence of an independent injury through Ms. Stillwell, Appellant failed to do so. Appellant also opted to attach no evidence to his responses to the multiple motions for summary judgment that would be indicative of an independent injury (*CR226-290*, *513-632*). Appellant created no genuine issue of material fact as to whether he suffered an independent injury. With no independent injury and no breach of contract, the trial court properly granted summary judgment on causes of action for violations of Chapter 541, the DTPA, and the duty of good faith and fair dealing.[4]

---

[4] Appellant points to two issues in his brief that he argues constitute an issue of material fact to serve as a basis for extra-contractual liability. The first is that Appellee's file contained two letters which contained inconsistencies, one of which was sent to Appellant. *Appellant Br. 17*. The second is that based upon the timeline by which Appellee accepted coverage following Appellant's reporting of the claim. *Appellant Br. 17-19*. To the extent Appellant argues that these issues are evidence of a violation of Chapter 542, Section IV of this brief addresses those issues. To the extent Appellant argues these issues create a genuine issue of material fact to establish a violation of Chapter 541 or the DTPA, Appellant has still not presented any evidence or created a genuine issue of material fact as to whether he sustained damages as required by Section 541.151 of the Texas Insurance Code. *Tex. Ins. Code §541.151.*

The *Menchaca* opinion was issued by the Supreme Court of Texas on April 7, 2017 between the judgment in this case and Appellant's deadline to file his brief. *Menchaca*, 2017 WL 1311752 at *1. In Appellant's brief, he argues that the *Menchaca* opinion clarifies that "...a breach of contract is not required for a plaintiff to recover extra-contractual and statutory damages." *Appellant Br. 15*. This interpretation of *Menchaca* ignores the issue of an independent injury, and ignores the opinion in *Hurst* issued on May 23, 2017 by Houston's 14th District Court of Appeals. The *Menchaca* opinion provides five distinct but interrelated rules governing the interplay of contractual and extra-contractual claims arising from an insurance policy. *Menchaca*, 2017 WL 1311752 at *4. But the *Menchaca* case is not an appraisal case, and the opinion notes that neither party invoked the appraisal clause "as a method for resolving this dispute." *Menchaca*, 2017 WL 1311752 at n.2. *Menchaca* examined whether an insured can recover policy benefits for violation of Chapter 541 of the Texas Insurance Code when the insurer has complied with its duties under the policy. *Menchaca*, 2017 WL 1311752 at *1. The five rules espoused in *Menchaca* do not provide Appellant a path to recovery for extra-contractual damages because the only rule that applies to Appellant is the independent

injury rule and Appellant has no evidence of an independent injury.[5] The independent injury rule in *Menchaca* has two aspects: (1) when an insurer's 541 violation causes an injury independent of policy benefits the insured may recover damages for the injury even if the insured is not entitled to benefits; and (2) an insurer's violation of 541 does not permit the recovery of any damages other than policy benefits unless there is an injury independent of the policy benefits. *Id* at *11. The Appellant presented no evidence to the court that he had suffered an injury independent of the insurance contract, and in fact confirmed that his complaint was that he was not paid the amounts owed under the policy (*CR504*).

The *Hurst* court applied the *Menchaca* opinion to an appraisal case and held that:

---

[5] The first rule (an insured cannot recover policy benefits for a statutory violation if there is no right to the benefits under the policy) does not apply because there is clearly a right to policy benefits in this case. *Menchaca*, 2017 WL 1311752 at *4-5. The second rule (an insured who established a right to recover benefits under a policy can recover those benefits as actual damages under Chapter 541 if the Chapter 541 violation causes the loss of a benefit) does not apply because the timely payment of the appraisal award means no benefits were lost. *Menchaca*, 2017 WL 1311752 at *7-9. The third rule (an insured can recover policy benefits even if the policy does not provide for them if the conduct of the insurer caused the insured to lose the contractual right to those benefits) does not apply because the insured is entitled to benefits under the policy and received them through the appraisal award. *Menchaca*, 2017 WL 1311752 at *9-10. The fifth rule (that no damages can be recovered for a statutory violation unless the insured proves a right to benefits under the policy or an independent injury) does not apply because all benefits have been tendered per the appraisal award and there is no independent injury. *Menchaca*, 2017 WL 1311752 at *12.

1. to recover damages beyond policy benefits the bad faith or statutory violation must cause an independent injury;

2. that an independent injury is rare and no Texas court has encountered one; and

3. that timely tender of an appraisal award afforded the insured all policy benefits he was entitled to and that there was no independent injury that would entitle the insured to recover under extra contractual theories.

*Hurst*, 2017 WL 2258243 at 6. The *Hurst* opinion noted that Hurst's own testimony was that his dispute with the insurer was that the initial payment was too low. *Id.* The substance of that testimony is identical to that of Appellant (*CR504*). The *Hurst* Court's application of *Menchaca* is correct and applies to this case because both Hurst and Appellant are owed no policy benefits that could serve as a measure of damages under the Texas Insurance Code, DTPA, or duty of good faith and fair dealing, and neither Hurst nor Appellant had any evidence of an independent injury that would serve as a basis for extra-contractual damages. Therefore, there is no genuine issue of material fact as to whether Appellant is owed policy benefits or suffered an independent injury. The trial court was correct in granting summary judgment on the causes of

action pled under Chapter 541, the DTPA, and the common law duty of good faith and fair dealing.

## CONCLUSION AND PRAYER

WHEREFORE, Appellee Farmers Insurance Exchange prays that this Court affirm the District Court's granting of summary judgment on all causes of action asserted by Appellant.

Respectfully submitted,

_s/ Scot G. Doyen_
Scot G. Doyen
Texas Bar No. 00792982
sdoyen@ds-lawyers.com
Alasdair Roberts
Texas Bar No. 24068541
aroberts@ds-lawyers.com
DOYEN SEBESTA, LTD., L.L.P.
450 Gears Road, Suite 350
Houston, Texas 77067
Telephone: 713-580-8900
Facsimile: 713-580-8910

ATTORNEYS FOR DEFENDANT
FARMERS INSURANCE EXCHANGE

# CERTIFICATE OF COMPLIANCE

I hereby certify that the number of words contained in this Appellee's Brief is 5914.

*s/ Scot G. Doyen*
Scot G. Doyen

# CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2017, true and correct copies of the above and foregoing instrument have been e-served on the following counsel for Appellant Mahmoud Abdalla:

Chris Schleiffer
Scott Hunziker
The Voss Law Firm, P.C.
26619 Interstate 45 South
The Woodlands, Texas 77380
(713) 861-0015
(713) 861-0021 (Facsimile)
scott@vosslawfirm.com

*s/ Scot G. Doyen*
Scot G. Doyen

26

153-269720-13

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

 **FARMERS**

**s1987**
**TEXAS**
**3rd Edition**

## TEXAS CHANGES

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS POLICY

**A.** The following apply to the Definitions of the Businessowners Property Coverage Form:

1. Paragraph **H.3.b.(2)** is replaced by the following:

**H.Property Definitions**

**3.b.** Ends the earlier of:

(1) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality; or

(2) The date when the business is resumed at a new permanent location.

"Period of restoration" does not include any increased period required due to the enforcement of any ordinance or law that regulates the construction, use or repair, or requires the tearing down of any property.

The expiration date of this policy will not cut short the "period of restoration."

**B.** The provisions of Items **E.1.** through **E.5.** below apply to the Businessowners Special Property Coverage Form.

1. Exclusion **B.2.k.(4)** is replaced by the following:

(4) Settling, cracking, shrinking, expansion or contraction;

2. The following is added to Paragraph **B.2.k.**, **Other Types of Loss** of the **Exclusions:**

(8) Release, discharge or dispersal of contaminants or pollutants.

**C. Legal Action Against Us**

1. The **Legal Action Against Us Property Loss Condition** is replaced by the following, except as provided in **F.2.** below:

**LEGAL ACTION AGAINST US**

No one may bring a legal action against us under this policy unless:

**a.** There has been full compliance with all of the terms of this insurance; and

**b.** The action is brought within 2 years and one day after the date on which the direct physical loss or damage occurred.

2. Paragraph **F.1.** above does not apply to the **Legal Action Against Us Liability And Medical Expenses General Condition** in the Businessowners Liability Coverage Form.

**D. Appraisal**

The **Appraisal Property Loss Condition** is replaced by the following:

**APPRAISAL**

If we and you disagree on the amount of loss, either may make written demand for an appraisal of the loss. In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of such demand. The two appraisers will select an umpire. If they cannot agree within 15 days upon such umpire, either may request that selection be made by a judge of a court having jurisdiction. Each appraiser will state separately the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding as to the amount of loss.

Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

153-269720-13

If there is an appraisal:

    **a.** You will retain your right to bring a legal action against us, subject to the provisions of the Legal Action Against Us Property Loss Condition; and

    **b.** We will still retain our right to deny the claim.

**E.** The provision requiring a signed, sworn proof of loss in the **Duties In The Event Of Loss Or Damage Property Loss Condition** is replaced by the following:

Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within 91 days after our request. We will supply you with the necessary forms.

**F.** The following is added to the **Property General Conditions:**

**5. Loss To Real Property**

The amount of insurance applicable to loss to real property by fire will be reduced by the amount of such loss. As repairs are made, the amount reduced will be reinstated to the extent of the value of the repairs. The reinstatement will not increase the specified Limits of Insurance.

No other loss insured against in the Businessowners Property Coverage Form will reduce the specified Limits of Insurance.

**G.** Paragraphs **d.** and **f.** of the Mortgageholders Property General Condition are replaced by the following:

    **d.** If we deny your claim because of your acts or because you have failed to comply with the terms of this policy, the mortgageholder will still have the right to receive loss payment if the mortgageholder:

        **(1)** Pays any premium due under this policy at our request if you have failed to do so;

        **(2)** Submits a signed, sworn proof of loss within 91 days after receiving notice from us of your failure to do so; and

        **(3)** Has notified us of any change in ownership, occupancy or substantial change in risk known to the mortgageholder.

    All of the terms of this policy will then apply directly to the mortgageholder.

    **f.** If this policy is cancelled, we will give the mortgageholder named in the Declarations written notice of cancellation.

    If we cancel this policy, we will notify the mortgageholder at least:

        **(1)** 14 days before the effective date of cancellation if we cancel for your nonpayment of premium; or

        **(2)** 30 days before the effective date of cancellation if we cancel for any other reason.

    If you cancel the policy, we will give the mortgageholder notice of cancellation to be effective on the date stated in the notice. The date of cancellation cannot be before the 10th day after the date we mail the notice.

**H.** The following is added to Paragraph E.2. in the **Duties in the Event of Occurrence, Offense, Claim or Suit Liability And Medical Expenses General Condition** in the Businessowners Liability Coverage Form:

We will notify the first Named Insured in writing of:

    **1.** An initial offer to compromise or settle a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 10th day after the date on which the offer is made.

    **2.** Any settlement of a claim made or "suit" brought against the insured under this coverage. The notice will be given not later than the 30th day after the date of the settlement.

**I.** The **Loss Payment Property Loss Condition** is amended as follows:

    **1.** Paragraph **6.d.(1)(b)** is replaced by the following:

        **(b)** If, at the time of the loss, the Limit of Insurance applicable to the lost or damaged property is less than 80% of the full replacement cost of the property immediately before the loss, we will pay the greater of the following amounts, but not more than the Limit of Insurance that applies to the property:

            **(i)** The actual cash value of the lost or damaged property; or

(ii) A proportion of the cost to repair or replace the lost or damaged property, after application of the deductible and without deduction for depreciation. This proportion will equal the ratio of the applicable Limit of Insurance to 80% of the full replacement cost of the property immediately before the loss.

2. The following is added:

ARTICLE 6.13. POLICY A LIQUIDATED DEMAND

A fire insurance policy, in case of total loss by fire of property insured, shall be held and considered to be a liquidated demand against the Company for the full amount of such policy. The provisions of this Article shall not apply to personal property.

J. Under the **Loss Payment Property** Loss Condition, the provisions pertaining to notice of our intentions and the time period for payment of claims are replaced by the following:

1. **Claims Handling**

a. Within 15 days after we receive written notice of claim, we will:

(1) Acknowledge receipt of the claim. If we do not acknowledge receipt of the claim in writing, we will keep a record of the date, method and content of the acknowledgment;

(2) Begin any investigation of the claim; and

(3) Request a signed, sworn proof of loss, specify the information you must provide and supply you with the necessary forms. We may request more information at a later date, if during the investigation of the claim such additional information is necessary.

b. We will notify you in writing as to whether:

(1) The claim or part of the claim will be paid;

(2) The claim or part of the claim has been denied, and inform you of the reasons for denial;

(3) More information is necessary; or

(4) We need additional time to reach a decision. If we need additional time, we will inform you of the reasons for such need.

We will provide notification, as described in **b.(1)** through **b.(4)** above within:

(1) 15 business days after we receive the signed, sworn proof of loss and all information we requested; or

(2) 30 days after we receive the signed, sworn proof of loss and all information we requested, if we have reason to believe the loss resulted from arson.

If we notified you that we need additional time to reach a decision, we must then either approve or deny the claim within 45 days of such notice.

2. We will pay for covered loss or damage within 5 business days after:

a. We have notified you that payment of the claim or part of the claim will be made and have reached agreement with you on the amount of loss; or

b. An appraisal award has been made.

However, if payment of the claim or part of the claim is conditioned on your compliance with any terms of this Policy, we will make payment within 5 business days after the date you have complied with such terms.

The following paragraphs are added:

3. **Catastrophe Claims**

If a claim results from a weather related catastrophe or a major natural disaster, the claim handling and claim payment deadlines described in **M.1.** and **M.2.** above are extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

(1) Is declared a disaster under the Texas Disaster Act of 1975; or

(2) Is determined to be a catastrophe by the State Board of Insurance.

4. The term "business day" as used in the Loss Payment Property Loss Condition, means a day other than Saturday, Sunday or a holiday recognized by the state of Texas.

153-269720-13

**K.** Paragraph **I.3.** of the Premiums Common Policy Condition does not apply.

**L.** The following is added to Exclusion **B.1.k.(4)** in the Businessowners Liability Coverage Form:

If the Mechanical Breakdown Optional Coverage in the Businessowners Property Coverage Form is shown as applicable in the Declarations, then this exclusion does not apply to:

   **(i)** Our right and duty to defend any "suit" alleging that you are liable for damage to personal property of another in your care, custody or control; and

   **(ii)** Paragraph **A.1.e.** Coverage Extension - Supplementary Payments;

with respect to "property damage" directly caused by an Accident to an Object as described in the Mechanical Breakdown Optional Coverage.

**R.** The following is added to the **Dishonesty** Exclusion in the Businessowners Special Property Coverage Form:

   **f. Dishonesty**

   This exclusion does not apply to coverage that is provided under the Employee Dishonesty Optional Coverage.

This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all the terms of the policy.

*153-269720-13*

Cause No. 153-~~267920~~-13

| | | |
|---|---|---|
| MAHMOUD ABALLA, | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| FARMERS INSURANCE | § | |
| EXCHANGE | § | 153rd JUDICIAL DISTRICT |

## AWARD OF UMPIRE

Previously, the parties invoked the appraisal process in this matter. Because the parties, through their designated appraisers, were unable to agree on an individual to serve as Umpire, the Court duly appointed the undersigned to serve as Umpire in accordance with the applicable policy of insurance affecting the damaged property.

The appraisers have completed their assignments of appraisal. Thus, this Award of Umpire is submitted to the Court for filing and to conclude this process. This appraisal process resulted from the parties' written agreement.

Attached to this Award is a document entitled "Appraisal Award" prepared by one of the duly selected appraisers, namely, Kyle P. Albright, Sr., IA, CGA, FCLS, P.O. Box 16026, Galveston, TX, 77552-6026.

This appraisal is evidenced by the document attached to this award.

It is the Umpire's considered opinion that the Albright appraisal of an actual cash value loss amount of $345,664.21 (three hundred forty-five thousand, six hundred sixty-four dollars and twenty-one cents) is the more sound and well supported appraisal. Accordingly, the Umpire

*Filed October 8, 2014*

Page 1 of 2

hereby awards this sum of money to make whole the damages caused to the subject property.

Awarded and signed this 8th day of October, 2014.

Charles Bleil, Umpire

## APPRAISAL AWARD

**Date:** 10/7/2014

Re:     Insured(s):           Mahmoud Abdalla
         Claim #:               8000290825
         Policy #:              0604851630
         Date of Loss:        2/21/2012
         Location:             1000 Avenue H E, Arlington, TX 76011

We, the undersigned, pursuant to the within appointment, DO HEREBY CERTIFY that we have truly and conscientiously performed the duties assigned determined and do hereby award as the Actual Cash Value and the Replacement Cost Value of said property.

Item: <u>Dwelling:</u>          RCV - $ 340,688.03                 ACV - $ 324,496.27

Item: <u>APS</u>               RCV - $      -0-                    ACV - $       -0-

Item: <u>Contents:</u>         RCV - $ 23,314.19                  ACV - $ 21,167.94

Item: <u>ALE/LOSS OF USE:</u>         $      -0-

TOTAL AMOUNT OF LOSS         $ 364,002.22

AMOUNT OF DEPRECIATION       $  18,338.01

ACTUAL CASH VALUE OF LOSS    $ 345,664.21

SPECIAL PROVISIONS:

1.  Subject to policy provisions and deductible
2.  Less any previous payments per this claim
3.  Policy coverage to be addressed by others
4.  The above amount(s) are all inclusive as relate to this claim

APPRAISER –     _____  DATE  10-7-2014
                       Kyle P. Albright, Sr.

UMPIRE -        _____  DATE 10 - 8-2014

29

**TAB C**

153-269720-13

 **FARMERS** INSURANCE

Toll Free: (800) 435-7764
Send all correspondence to:
Email: myclaim@farmersinsurance.com
National Document Center
P.O. Box 268994
Oklahoma City, OK 73126-8994
Fax: (877) 217-1389

October 15, 2014

ATTN SCOTT HUNZIKER
VOSS LAW FRIM
26619 INTERSTATE 45
SPRING TX 77380

| RE: | Insured: | Mahmoud Abdalla and Nancy Abdalla |
| | Claim Unit Number: | 8000290825-1-2 |
| | Policy Number: | 0604851630 |
| | Loss Date: | 02/21/2012 |
| | Location of Loss: | 1000 Ave H E, Arlington, TX |
| | Subject: | Settlement Notice |

Dear Mr. Hunziker:

We appreciate the opportunity to serve our insured's insurance needs and we are here to help our customer through the claims process as efficiently as possible. Enclosed, please find actual cash value payment for your client's building and the replacement cost value payment on their business personal property claim based on the signed appraisal award, less the applicable policy deductible and prior payments. I have attached a copy of the signed award for your records. As part of the appraisal process our appraiser, Kyle Albright and your client's appraiser Max Judge submitted their evaluations of your client's damages to the selected umpire, Judge Charles Bleil. The award was signed by Mr. Albright on October 7, 2014 and by Mr. Bleil on October 8, 2014.

Here is an explanation of the settlement:

| Line of Coverage | Building | Business Personal Property |
|---|---|---|
| Replacement Cost | $340,688.03 | $23,314.19 |
| Less: Depreciation | $16,191.76 | $N/A |
| Actual Cash Value | $324,496.27 | $N/A |
| Less: Policy Deductible | $1,000.00 | $N/A |
| Settlement Amount | $323,496.27 | $23,314.19 |
| Less: Prior Payments | $247,370.46 | $17,458.83 |
| Amount | $76,125.81 | $5,855.98 |

The customer's policy has actual cash value and replacement cost value settlement options for their business personal property claim. Actual cash value is an amount less than the full replacement cost of the damaged property, and reflects a depreciated value based on the age and condition of the items at the time of loss relative

V624VRN4

# TAB C

153-269720-13

to the useful life of the property. We have elected to issue payment of this time for the full replacement cost of your client's businesss personal property claim per the appraisal award without deduction for depreciation.

The policy provides actual cash value coverage for your client's building loss. Actual cash value is the replacement cost of the damages less any applicable depreciation. The claim was settled at replacement cost less the appropriate deductions for depreciation based upon signed appraisal award.

The policy requires I include the mortgage company as a payee on their building loss. To minimize delays in repairs, we suggest our customer contact their mortgage company to find out their requirements for endorsing the payment and releasing the funds.

We wish to inform you there are time limits as found in the Conditions language of your client'spolicy. These limits may have been extended by statute in your state. The time period set forth in the Conditions section is the shortest period which may apply. In regard to time limits, this policy has been modified by the TEXAS CHANGES Endorsement, s1987 3rd Edition which states:

C. Legal Action Against Us

1. The Legal Action Against Us Property Loss Condition is replaced by the following, except as provided in F.2. below:

LEGAL ACTION AGAINST US

No one may bring a legal action against us under this policy unless:

a. There has been full compliance with all of the terms of this insurance; and

b. The action is brought within 2 years and one day after the date on which the direct physical loss or damage occurred.

Please note, on occasion, endorsements are updated with newer editions. We encourage you to reference your client's policy and included endorsements for any updates.

By the writing of this letter, we do not waive any of the terms, conditions, or provisions of your client's insurance policy, all of which are expressly retained and reserved. Any activity on our party does not constitute a waiver of our rights.

If you have any questions about the claim, please do not hesitate to contact me directly at my primary phone number (512) 619-2475. Although not my main office number, in case of immediate need an alternative number for our claims office is (866) 850-6372.

Thank you.

Sincerely,
Truck Insurance Exchange

*Tonya Stilwell*

Tonya Stilwell
Senior Commercial Property General Adjuster
(512)619-2475

V624VRN4

Farmers/Mahmoud
8000290825
34469

# TAB C

153-269720-13
CC: CARNAHAN AND THOMAS
Check(s): 1607496704, 1607497616
Enclosure(s):
Gen Supporting Documents

V624VRN4

# TAB C

153-269720-13

## APPRAISAL AWARD

Date: 10/7/2014

Re:   Insured(s):     Mahmoud Abdalla
     Claim #:       8000290825
     Policy #:      0604851630
     Date of Loss:   2/21/2012
     Location:     1000 Avenue H E, Arlington, TX 76011

We, the undersigned, pursuant to the within appointment, DO HEREBY CERTIFY that we have truly and conscientiously performed the duties assigned determined and do hereby award as the Actual Cash Value and the Replacement Cost Value of said property.

| Item: Dwelling: | RCV - | $ 340,688.03 | ACV - | $ 324,496.27 |
|---|---|---|---|---|
| Item: APS | RCV - | $  -0- | ACV - | $  -0- |
| Item: Contents: | RCV - | $ 23,314.19 | ACV - | $ 21,167.94 |
| Item: ALE/LOSS OF USE: | | $  -0- | | |

TOTAL AMOUNT OF LOSS    $ 364,002.22

AMOUNT OF DEPRECIATION   $  18,338.01

ACTUAL CASH VALUE OF LOSS  $ 345,664.21

SPECIAL PROVISIONS:

1. Subject to policy provisions and deductible
2. Less any previous payments per this claim
3. Policy coverage to be addressed by others
4. The above amount(s) are all inclusive as relate to this claim

APPRAISER –    _____  DATE _10-7-2014_
         Kyle P. Albright, Jr.

UMPIRE –    _____  DATE _10-8-2014_
         CHARLES BLEIL

# TAB C

153-269720-13

Cause No. 153-~~267920-13~~  ~2697720-13~~

| MAHMOUD ABALLA. | § | IN THE DISTRICT COURT |
| | § | |
| | § | |
| v. | § | TARRANT COUNTY, TEXAS |
| | § | |
| FARMERS INSURANCE | § | |
| EXCHANGE | § | 153rd JUDICIAL DISTRICT |

---

## AWARD OF UMPIRE

---

Previously, the parties invoked the appraisal process in this matter. Because the parties, through their designated appraisers, were unable to agree on an individual to serve as Umpire, the Court duly appointed the undersigned to serve as Umpire in accordance with the applicable policy of insurance affecting the damaged property.

The appraisers have completed their assignments of appraisal. Thus, this Award of Umpire is submitted to the Court for filing and to conclude this process. This appraisal process resulted from the parties' written agreement

Attached to this Award is a document entitled "Appraisal Award" prepared by one of the duly selected appraisers, namely, Kyle P. Albright, Sr., IA, CGA. FCLS, P.O. Box 16026, Galveston, TX. 77552-6026.

This appraisal is evidenced by the document attached to this award.

It is the Umpire's considered opinion that the Albright appraisal of an actual cash value loss amount of $345,664.21 (three hundred forty-five thousand, six hundred sixty-four dollars and twenty-one cents) is the more sound and well supported appraisal. Accordingly, the Umpire

*Filed October 8, 2014*

Page 1 of 2

**TAB C**

153-269720-13

hereby awards this sum of money to make whole the damages caused to the subject property.

Awarded and signed this 8ᵗʰ day of October, 2014.

Charles Bleil, Umpire