## NATIONAL SECURITY FIRE & CASUALTY COMPANY, Action Claim Service, Inc. and Aaron Timmins, Appellants

v.

### Ozier HURST, Appellee

### NO. 14-15-00714-CV

Court of Appeals of Texas, Houston (14th Dist.).

Opinion Filed May 23, 2017

Rehearing Overruled July 25, 2017

---

Robert Joseph Killeen Jr., Houston, TX, for Appellants.

Gregory F. Cox, Beaumont, TX, for Appellee.

Panel consists of Justices Busby, Donovan, and Wise.

## OPINION

John Donovan, Justice

National Security Fire & Casualty Company, Action Claim Service, Inc., and Aaron Timmins. (collectively "appellants") bring this appeal from a judgment entered in accordance with the jury's verdict in favor of Ozier Hurst, National's insured. For the reasons stated below, we reverse and render.

### BACKGROUND

Dissatisfied with the initial estimate and payment, homeowner Ozier Hurst sued his insurer, National Security Fire & Casualty Company, the adjusting firm, Action Claim Services, Inc., and the independent adjuster, Aaron Timmins, for contractual and extra-contractual claims arising from wind-related damages sustained by his home during Hurricane Ike. Six hundred and seventy days after the hurricane, Hurst submitted a damage claim to National. National then assigned the claim to Action, who in turn dispatched Timmins to assess the damage done to Hurst's house. In accordance with Timmins' appraisal, National paid Hurst $3,524.56 (accounting for the $1,000 policy deductible), which Hurst accepted. Although Hurst cashed the check, he did not use any of the money to repair his property, nor did he request re-inspection or inspection of additional property. Hurst proceeded to file suit on September 7, 2010.

Hurst counsel invoked the Policy's appraisal clause [1] on February 19, 2014. Both

---

1. The clause at issue in this case provides:

   7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss, or the cost of repair, either can make a written demand for appraisal. Each will then select a competent independent appraiser and no-tify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a

parties hired appraisers. National hired Mark West and Hurst hired Shannon Cook. West and Cook could not agree on the amount of Hurst's loss. Furthermore, they could not agree upon an umpire to resolve the impasse, so the MDL Court was requested to appoint one.

The MDL Court appointed Judge Mark Davidson as umpire and on September 25, 2014, he issued Hurst an award of $7,166.36. On October 25, 2014, National issued a check to Hurst and his counsel for $3,641.80 representing the difference between the amount of the umpire's award and the amount originally paid to Hurst for his claim. Hurst did not move to set aside the award. Hurst never returned nor cashed National's check but continued pursuing the underlying litigation.

Trial was held and the jury found in favor of Hurst. The jury found National liable for breach of contract and awarded $3,641.80 as damages. The jury determined September 25, 2014, as the date National secured final proof of loss. The jury found National, Action, and Timmins engaged in an unfair or deceptive act or practice that caused damages to Hurst by failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim when the liability under the insurance policy had become reasonably clear.[2] Further, the jury found Action and Timmins engaged in an unfair or deceptive act or practice that caused damages to Hurst by refusing to pay a claim without conducting a reasonable investigation.[3] The jury assessed $41,396.71 as damages for these acts. The jury found Action and Timmins, but not National, knowingly engaged in such conduct and awarded $12,500 in damages against Action and $12,500 in damages against Timmins. The jury found National breached its duty of good faith and fair dealing and awarded $25,000 as damages.

The trial court denied all post-trial motions and in accordance with the jury's verdict signed a Final Judgment awarding Hurst $55,993.60 from National, $22,731.22 from Action, $22,731.22 from Timmins, prejudgment interest, post judgment interest, 18% penalty interest, court costs, $75,000.00 in attorney's fees for trial, $50,000.00 in conditional appellate fees, and $35,000.00 in conditional fees for an appeal to the Texas Supreme Court. The trial court allowed the motion for new trial to be overruled by operation of law. National now appeals on behalf of itself, Action, and Timmins.[4]

## ANALYSIS AND DISCUSSION

We first address appellants' argument that the trial court erred in failing to grant a directed verdict. They contend the full and timely payment of the appraisal award precludes as a matter of law any award for

district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If the appraisers fail to agree, they will submit their difference to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.
Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

2. The jury apportioned responsibility as follows: National—60 percent; Action—20 percent; and Timmins—20 percent.

3. The jury apportioned responsibility as follows: Action—60 percent; and Timmins—40 percent.

4. We reject Hurst's initial argument that Action and Timmins are not properly before this court. This court granted appellants' motion for leave to file an amended notice of appeal naming Action and Timmins as appellants.

breach of contract, penalty interest, or any statutory or common-law bad faith violations.

## Standard of Review

A motion to disregard the jury's findings and direct a verdict should be granted when the evidence is conclusive and one party is entitled to recover as a matter of law, *Mancorp, Inc. v. Culpepper*, 802 S.W.2d 226, 227 (Tex. 1990), or when a legal principle precludes recovery. *JSC Neftegas-Impex v. Citibank, N.A.*, 365 S.W.3d 387, 396 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see also Coastal Ref. & Mktg., Inc. v. Coastal Offshore Ins., Ltd.*, No. 14-94-01140-CV, 1996 WL 87205, at *2 (Tex. App.—Houston [14th Dist.] Feb. 29, 1996, no writ) (not designated for publication). To the extent that such a ruling is based on a question of law, it is reviewed de novo. *See In re Humphreys*, 880 S.W.2d 402, 404 (Tex. 1994) ("[Q]uestions of law are always subject to de novo review."); *Elliott v. Whitten*, No. 01-02-00065-CV, 2004 WL 2115420, at *3 (Tex. App.—Houston [1st Dist.] September 23, 2004, pet. denied) (mem. op.).

## Appraisal Clauses

Appraisal clauses appear in almost every homeowner, property, or automobile insurance policy in Texas, and they are generally enforceable absent illegality or waiver. *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 889 (Tex. 2009); *see also In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406-07 (Tex. 2011). In an appraisal clause, the insurer and insured agree to an extra-judicial "remedy for any disagreement regarding the amount of loss" owed the insured. *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App.—Corpus Christi 2004, pet. denied). From a policy point of view, appraisal clauses allow the insured and insurer to resolve disputes about damages with greater efficiency by eliminating the cost and delay of traditional litigation. *Universal Underwriters*, 345 S.W.3d at 407.

Every reasonable presumption will be indulged to sustain an appraisal award. *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ)); *see also United Neurology, P.A. v. Hartford Lloyd's Ins. Co.*, 101 F.Supp.3d 584, 595 (S.D. Tex.), *aff'd*, 624 Fed.Appx. 225 (5th Cir. 2015); *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009). Appraisal clauses estop a party from contesting the issue of damages in a lawsuit based on an insurance contract, leaving only the question of liability for the court. *Id.* If a party seeks to avoid an appraisal award, the burden of proof is theirs to raise an issue of material fact as to why the resolution they contractually agreed to should be set aside. *Lundstrom v. United Servs. Auto Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Franco*, 154 S.W.3d at 786). An otherwise binding appraisal award may be set aside when (1) the award was made without authorization; (2) it was the result of fraud, accident or mistake; or (3) it failed to comply with the requirements of the insurance policy. *Id.*

If the appraisal award is not set aside, this contractual process settles the issue of damages, and settlement of the full amount owed estops the insured from bringing a breach of contract claim against the insurer. *Franco*, 154 S.W.3d at 787. "[T]he reason an insured is estopped from maintaining a breach of contract claim against the insurer after receiving full payment of an appraisal award is that the very object of the binding appraisal pro-

cess is to avoid litigation on the issue of damages and not to facilitate liability." *Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 2014 WL 4796967, at *16 (N.D. Tex. Sept. 26, 2014) (citing *Breshears*, 155 S.W.3d at 343). This reasoning applies with special force where the parties agreed to provide for a binding appraisal process in their contract. *Id.; see also United Neurology*, 101 F.Supp.3d at 618; *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-00396-CV, 2007 WL 2264477, at *3 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.) (stating that the purpose of an appraisal clause is to provide a binding, extra-judicial remedy for any disagreement regarding the amount of the loss).

### Breach of Contract

■ National contends Hurst's breach of contract claim was estopped by the appraisal award. Hurst argues that because he did not accept National's tendered payment—he neither executed the release nor cashed the check—his breach of contract claim was not estopped.

"Under Texas law, when an insurer makes timely payment of a binding and enforceable appraisal award, and the insured accepts the payment, the insured is 'estopped by the appraisal award from maintaining a breach of contract claim against [the insurer].'" *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 Fed.Appx. 366, 368 (5th Cir. 2012) (quoting *Franco*, 154 S.W.3d at 787). We do not dispute this, but in both *Franco* and *Blum's Furniture*, the insured accepted payment of the award. *See Franco*, 154 S.W.3d at 787; *Blum's Furniture*, 459 Fed. Appx. at 367. Accordingly, neither of those cases determined whether acceptance of the payment was a necessary condition for estoppel.

■ Generally, tender of the full amount owed pursuant to the conditions of an appraisal clause is all that is required to estop the insured from raising a breach of contract claim. *See Brownlow v. United Servs. Auto. Ass'n*, No. 13-03-758-CV, 2005 WL 608252, at *2 (Tex. App.—Corpus Christi Mar. 17, 2005, pet. denied) (mem. op.); *Toonen v. United Servs. Auto. Ass'n*, 935 S.W.2d 937, 940 (Tex. App.—San Antonio 1996, no writ). Where the insurer tenders full and timely payment of the appraisal award, the insured's rejection of the payment does not prevent estoppel. *United Neurology*, 101 F.Supp.3d at 619; *see also Devonshire Real Estate & Asset Mgmt.*, 2014 WL 4796967, at *18 (holding "so long as there is a binding and enforceable appraisal award and the insurer timely and full[y] pays the resulting award, estoppel should apply regardless of whether the insured actually accepts payment."). By payment of the full amount of an appraisal award, the insurer "complie[s] with every requirement of the contract, [and] it cannot be found to be in breach." *Breshears*, 155 S.W.3d at 344; *see also Caso v. Allstate Tex. Lloyds*, No. 7:12-CV-478, 2014 WL 528192, at *6 (S.D. Tex. Feb. 7, 2014) (dismissing plaintiffs' breach of contract claim even though plaintiffs rejected tender of the appraisal award because insurer's "compliance with the appraisal provision and timely tender estop Plaintiffs' breach of contract claim"). Accordingly, we conclude acceptance of the payment is not a necessary condition for estoppel. *See United Neurology*, 101 F.Supp.3d at 620 (rejecting insured's argument that breach of contract claim was not estopped because it did not accept the payment of the appraisal award tendered to it by the insurer). This does not end our inquiry, however, as Hurst claims the inclusion of the release rendered National's payment a partial or conditional tender.

Hurst contends that because he was instructed to hold the money in trust until he had executed a release the final payment was only a partial payment.[5] Hurst also argues because no additional consideration was offered for the release, it constituted an unlawful and unenforceable attempt to obtain a full release when only a partial payment was tendered. In addition, Hurst argues that National breached the policy by conditioning its tender of the appraisal award on a release of extra-contractual claims against National and third parties.

We find *Barry v. Allstate Tex. Lloyds*, which both appellants and Hurst reference in their briefs, instructive. No. 4:14-CV-00870, 2015 WL 1470429, at *2 (S.D. Tex. Mar. 31, 2015). In that case, the insurer invoked the appraisal clause and issued the remaining balance of the appraisal award owed to the insured, instructing him to hold it in trust until a negotiated release was executed. The plaintiff refused to execute the release and cashed the check. *Id.* The court held that, absent some genuine issue of fact to support setting the appraisal award aside, the plaintiff was estopped from pursuing a breach of contract claim against the insurer. *Id.* at *4 (citing *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). The court then addressed whether plaintiff's extra-contractual claims were precluded because their breach of contract claim failed. *Id.* Applying the independent injury rule, the court determined there was no evidence the insurer committed an act so extreme as to cause injury independent of the policy claim. *Id.* The *Barry* court did not conclude that conditioning the payment of the appraisal award upon execution of the release constituted a breach of contract or rendered payment of the appraisal award deficient, so as to allow the breach of contract claim to go forward.[6] Further, the *Barry* court did not hold the release barred the extra-contractual claims, even though the plaintiff accepted payment.

Unlike the plaintiff in *Barry*, Hurst never objected to the release, though he did not accept the payment. Like *Barry*, the tender here was for the entire "set" amount of loss under the policy in accordance with the appraisal award. That award is a result of Hurst's invocation of the insurance policy's extra-judicial means of resolving the amount of loss, in which Hurst participated. National tendered the full amount of loss as determined by the appraisal process. The release of the extra-contractual claims did not render that tender less than the "set" amount.[7] We therefore conclude that under the facts of this case Hurst's claim for breach of contract is precluded as a matter of law. Accordingly, the trial court erred in denying the motion for directed verdict on Hurst's breach of contract claim. *See JSC Neftegas-Impex*, 365 S.W.3d at 396.

▮ In addition to damages for breach of contract, the trial court awarded pre-

---

5. We note that National did not seek a release with the initial payment of Hurst's claim.

6. In this case the release was limited to claims arising from Hurricane Ike in 2008. Clearly, conditioning payment of an appraisal award on a release for claims that did not arise from the same event would present a different issue—one which we are not called upon to decide here.

7. Hurst argues that the release of the extra-contractual claims is unsupported by consideration, and therefore unenforceable, given that National was already obligated to pay the appraisal award under the terms of the policy. But Hurst did not accept the tender of the award or sign the accompanying release, and we conclude below that Hurst's extra-contractual claims fail for other reasons. We therefore need not address whether the release of the extra-contractual claims would have been enforceable had Hurst accepted the tender.

judgment interest. Insurers owe prejudgment interest on top of the policy benefits only if they withheld those benefits in breach of the insurance contract. *Breshears*, 155 S.W.3d at 344 (citing *Henson v. Southern Farm Bureau Cas. Ins. Co.*, 17 S.W.3d 652, 654 (Tex. 2000)). Because Hurst is estopped as a matter of law from recovering for breach of contract, there is no basis for awarding prejudgment interest. *Id.* (citing *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 554 (Tex. 1985)).

### Extra-contractual Claims

The jury also found against appellants on Hurst's claims for violation of the prompt payment provisions of section 542 of the Insurance Code, common-law bad faith, and unfair settlement practices in violation of section 541.151 of the Insurance Code.

#### 1. Prompt Payment

█ Section 542.058 of the Insurance Code provides that an insurer shall pay damages, with interest, and attorney's fees if an insurer delays payment of a claim for longer than 60 days. Tex. Ins. Code § 542.058. As this court has recognized, full and timely payment of an appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law. *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d 556, 563 (Tex. App.—Houston [14th Dist.] 2010, no pet.), *overruled on other grounds by In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 405–07 (Tex. 2011).

The record reflects, and the jury found, the appraisal award was determined on September 25, 2014. It is undisputed that National issued a check in payment of the appraisal award on October 25, 2014—well within the timeliness requirements of section 542.058. *See Bernstien v. Safeco Ins. Co. of Ill.*, No. 05-13-01533-CV, 2015 WL 3958282, at *1 (Tex. App.—Dallas June 30, 2015, no pet.) (mem. op.) (holding payment nine days after the date of the appraisal award was timely under section 542) (citing *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 563–64). On appeal, Hurst does not claim the payment of the appraisal award was untimely, but that it was not a payment because it was accompanied by a release. We have determined otherwise. Because the evidence conclusively demonstrates that National fully and timely paid the appraisal award, Hurst is precluded from maintaining his prompt payment claim as a matter of law.

#### 2. Bad Faith and Unfair Settlement Practices

The jury found National breached its common-law duty of good faith and fair dealing. The jury also found Chapter 541 of the Insurance Code and the DTPA were violated by National, Action and Timmins "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear," and by Action and Timmins "refusing to pay a claim without conducting a reasonable investigation with respect to the claim." Under Texas law, an individual damaged by "unfair method[s] of competition or unfair or deceptive act[s] or practice[s] in the business of insurance" may bring a cause of action under the Insurance Code. Tex. Ins. Code § 541.151. "The prohibited conduct includes 'failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability has become reasonably clear.'" *Performance Autoplex II Ltd. v. Mid–Continent Cas. Co.*, 322 F.3d 847, 860–61 (5th Cir. 2003) (quoting Tex. Ins. Code

§ 541.151). A violation of Chapter 541 of the Texas Insurance Code is also a violation of the DTPA. Tex. Bus. & Com. Code § 17.50(a)(4).

■ "Texas law holds that extra-contractual tort claims pursuant to the Insurance Code and the DTPA require the same predicate for recovery as a bad faith claim under a good faith and fair dealing violation." *Broxterman v. State Farm Lloyds*, No. 4:14-CV-661, 2016 WL 482882, at *2 (E.D. Tex. Feb. 4, 2016). "When an insured joins claims under the Texas Insurance Code and the DTPA with a bad faith claim, all asserting a wrongful denial of policy benefits, if there is no merit to the bad faith claim, there can be no liability on either statutory claim." *O'Quinn v. Gen. Star Indem. Co.*, No. 1:13-CV-471, 2014 WL 3974315, at *8 (E.D. Tex. Aug. 5, 2014). Thus, we jointly consider Hurst's extra-contractual claims.

■ It is undisputed that Hurst had a right to receive benefits under the insurance policy, and we have held that he received those benefits in the form of National's initial payment and subsequent tender of the appraisal award. In order to recover any damages beyond policy benefits, the statutory violation or bad faith must cause an injury that is independent from the loss of benefits. *USAA Tex. Lloyds Co. v. Menchaca*, No. 14-0721, — S.W.3d —, — – —, 2017 WL 1311752, at *11-12 (Tex. Apr. 7, 2017). The *Menchaca* court recognized that "a successful independent-injury claim would be rare, and we in fact have yet to encounter one." *Id.* at *12 (citing *Mid–Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 521 (5th Cir. 2013)) (observing "[t]he *Stoker* language[8] has frequently been discussed, but in seventeen years since the

decision appeared, no Texas Court has yet held that recovery is available for an insurer's extreme act, causing injury independent of the policy claim.") The *Menchaca* court explained that "[t]his is likely because the Insurance Code offers procedural protections against misconduct likely to lead to an improper denial of benefits and little else." *Id.* The court acknowledged that it has further limited the natural range of injury by insisting that an "independent injury" may not "flow" or "stem" from denial of policy benefits. *Id.* (citing *Provident Am. Ins. Co. v. Castañeda*, 988 S.W.2d 189, 198 (Tex. 1998)). And the court recognized that "although we reiterate our statement in *Stoker* that such a claim could exist, we have no occasion to speculate what would constitute a recoverable independent injury." *Id.*

■ Hurst's claims against appellants for bad faith and unfair settlement practices are based upon the initial investigation and resulting estimate. National never denied coverage of Hurst's property under the policy, the claim was promptly investigated, payment was tendered, and Hurst accepted that payment. According to Hurst's own testimony, his only quarrel with the initial payment was that it was too low. Hurst subsequently filed suit and eventually invoked the appraisal clause. National participated in the appraisal process and, following the umpire's award, timely tendered the full amount of the loss.

Hurst has received the benefits to which he was entitled under the policy and has not alleged any act so extreme as to cause independent injury. *See Menchaca*, — S.W.3d at — – —, 2017 WL 1311752, at *11-12; *see also Progressive Cty. Mut. Ins. v. Boyd*, 177 S.W.3d 919, 922 (Tex.

---

8. Referring to *Stoker's* explanation that the court was not excluding "the possibility that in denying the claim, the insurer may commit some act, so extreme, that would cause injury independent of the policy claim." 903 S.W.2d at 341.

 

2005) (holding any error in granting summary judgment on bad-faith claims harmless where insured made no allegations that he suffered any damages unrelated to or independent of the policy claim); *see generally Cantu v. State Farm Lloyds*, No. 7:14-CV-456, 2016 WL 5372542, at *8 (S.D. Tex. Sept. 26, 2016) (holding extra-contractual claims failed where insured did not allege an action constituting an independent injury); *Alvarado v. State Farm Lloyds*, No. 7:14-CV-166, 2016 WL 6905865, at *4-5 (S.D. Tex. June 15, 2016) (same). The fact that National sought a release does not, in and of itself, constitute such an act. *See Barry*, 2015 WL 1470429 at *4-5. The amount of damage to certain items, and which items were covered at all, speaks to the issue of damages and were therefore estopped by the appraisal award. *See Montoya v. State Farm Lloyds*, No. 7:14-CV-00182, 2016 WL 7734650, at *3-4 (S.D. Tex. Sept. 12, 2016). The claim of underpayment is not one that is independent of the issue of damages under the policy. *Id.* (holding insurers were entitled to summary judgment on extra-contractual claims where there was no evidence of an injury independent of underpayment or failure to timely investigate). Accordingly, the trial court erred in denying appellants' motion for directed verdict on Hurst's extra-contractual claims.

### CONCLUSION

■ As noted above, the binding appraisal process is an extra-judicial means designed to avoid litigation on the issue of damages. We conclude that an insured cannot defeat an otherwise valid and binding appraisal award simply by refusing to accept the insurer's payment of the award or by asserting extra-contractual claims that are derivative of the policy claim. To hold otherwise would obviate the very purpose of the binding appraisal process.

Accordingly, the trial court erred in denying the motion for directed verdict. We therefore reverse the judgment of the trial court and render judgment that Hurst's take nothing on his claims.