COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



LOUIS HINOJOS,               §

           Appellant,         §

v.                            §

STATE FARM LLOYDS and RAUL    §
PULIDO,

                              §

           Appellees.        §

                              §

No. 08-16-00121-CV

Appeal from the

County Court at Law No. 6

of El Paso County, Texas

(TC# 2014-DCV0368)

## O P I N I O N

Louis Hinojos appeals a grant of summary judgment entered against him in favor of State Farm Lloyds and Raul Pulido (State Farm). In three issues, Hinojos contends: (1) the trial court erred in granting summary judgment on his breach of contract claim because he had raised a genuine issue of material fact with regard to whether the appraisal was timely paid and to whether State Farm proved Hinojos had accepted the appraisal payment; (2) the trial court improperly granted summary judgment on his extra-contractual claims because his entitlement to recovery does not depend on his entitlement to damages under his breach of contract claims; and (3) the trial court erred in granting summary judgment on his claim under the Texas Prompt Pay Act because State Farm did not establish that it paid Hinojos his appraisal award, or alternatively the

award was paid outside of the sixty-day statutory-window. We affirm.

## BACKGROUND

On June 3, 2013, Luis Hinojos's home was damaged by a hail storm. Hinojos had insured his home with a State Farm homeowners policy and reported a claim for the damage the same day. A few days later on June 12, State Farm sent one of its adjusters, Raul Pulido, to inspect the home for damage. Hinojos was present for the inspection. After completing his inspection, Pulido estimated the damage to the home at $755.02, replacement cost value, which did not exceed Hinojos's policy deductible of $1,290.00. Pulido discussed his findings with Hinojos and State Farm sent Hinojos a letter stating that because the damage was less than the deductible, nothing would be paid on the claim.

Hinojos decided to hire a public adjuster to inspect the home to render a second opinion. The public adjuster identified hail damage to the roof and contacted State Farm and requested they re-inspect the home. Upon re-inspection on June 28, State Farm determined there was interior damage from roof leaks and estimated those damages at $3,859.22. There was additional damage to the home's shingles and other exterior roofing components, but State Farm expressly denied those claims based on its assessment that they were not caused by wind and hail. State Farm notified Hinojos of its findings on July 5 and sent him a check on August 7 for $1,995.11, representing the cash value payment after deducting $574.11 for recoverable depreciation and the policy's deductible of $1,290.00.

Six months later, Hinojos sued State Farm, asserting breach of contract, unfair settlement practices, violation of the prompt payment provisions of the Texas Insurance Code, breach of the duty of good faith and fair dealing, and fraud. In response, State Farm invoked the policy's

2

contractual appraisal provision. This provision creates a method for determination of damages when the parties cannot agree: each of the parties select a disinterested appraiser, and the two appraisers choose an umpire. Under the contract, an agreement on the amount of the loss by any two of the three binds the parties to that assessment of damages. An appraisal report, signed by one of the appraisers and the umpire, was sent to State Farm on December 31, 2015, setting the amount of loss at $38,269.95 replacement cost, or $26,259.86 actual cash value.

On January 7, 2016, State Farm sent Hinojos's counsel a check for $22,974.75, reflecting deductions for the prior payments, the deductible, and $12,010.09 in depreciation. But due to a clerical error the check was sent to the wrong address: "1322 Park Drive" instead of Hinojos's counsel's address, "1322 Space Park Drive." At a status conference on January 28, Hinojos's counsel informed State Farm he had not yet received the check for the appraisal award. State Farm reissued the check, sent it to the correct address, and notified counsel that Hinojos could claim the $12,010.09 withheld for depreciation value if he completed roof repairs by December of the following year, slightly under two years from the issuance of this second check. There was trouble with this payment too. The check included Bank of America as a payee because it had been listed as Hinojos's mortgage holder, but this was no longer the case, thus making the check non-negotiable. Hinojos's counsel returned the non-negotiable check to State Farm, and they received the check on April 25, 2016.

Meanwhile, State Farm had moved for summary judgment on March 30, asserting Hinojos was estopped from maintaining a breach of contract claim as a matter of law because it had timely paid the contractual appraisal award, and asserting Hinojos had no extra-contractual claims because it timely investigated his claim and he had no independent injury. The hearing for State

3

Farm's motion for summary judgment was held on May 5, at which time the trial court granted summary judgment for State Farm on all claims. This appeal followed.

## DISCUSSION

### The Breach of Contract Claims

In his first issue, Hinojos contends summary judgment was improper because he raised a genuine issue of material fact regarding whether the appraisal was timely paid and whether State Farm had proven he had accepted the appraisal payment. State Farm asserts these issues were waived, but contends that even if they were not: (1) refusal to accept payment or a reservation of rights cannot invalidate a contractual appraisal provision; and (2) the appraisal check was timely sent to Hinojos's counsel and any alleged delay was due to the acknowledged clerical errors, and clerical errors do not create fact issues regarding the timeliness of payment.

### *Standard of Review*

We review *de novo* a trial court's granting of a motion for summary judgment. *Merriam v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013)(*citing Buck v. Palmer*, 381 S.W.3d 525, 527 (Tex. 2012)). When, as here, the trial court does not specify the grounds for its ruling, a summary judgment must be affirmed if any of the grounds on which judgment was sought are meritorious. *Id.*, *(citing State v. Ninety Thousand Two Hundred Thirty–Five Dollars & No Cents in U.S. Currency*, 390 S.W.3d 289, 292 (Tex. 2013)). Summary judgment is appropriate when the movant shows that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a. In deciding whether a genuine issue precludes summary judgment, we must treat all evidence favorable to the non-movant as true and indulge every reasonable inference and resolve all doubts in its favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d

211, 215 (Tex. 2002). When a defandant conclusively negates at least one element of the plaintiff's cause of action or conclusively establishes all elements of an affirmative defense, the defendant is entitled to summary judgment. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 355 (Tex. 1995)(*citing Cathey v. Booth*, 900 S.W.2d 339 (Tex. 1995)).

### *Applicable Law*

An appraisal award made pursuant to the provisions of an insurance contract is binding and enforceable unless the insured proves the award was unauthorized or the result of fraud, accident, or mistake. *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex.App.—Corpus Christi 2004, pet. denied)(mem. op.)(*citing Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 252 (Tex.App.— Austin 2002, pet. abated). A valid appraisal payment estoppes a party from contesting the issue of damages in a suit on the insurance contract but still leaves the question of liability for the court. *Lundstrom v. United Services Auto. Ass'n-CIC*, 192 S.W.3d 78, 87 (Tex.App.—Houston [14th Dist.] 2006, pet. denied)(*citing Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 786 (Tex.App.—Houston [14th Dist.] 2004, no pet.)). A court shall indulge every reasonable presumption to sustain an appraisal award. *Id*.

In the context of a motion for summary judgment, the non-movant must expressly present to the trial court, by written answer or response, any issues defeating the movant's entitlement to summary judgment. *McConnell v. Southside Independent School Dist.*, 858 S.W.2d 337, 343 (Tex. 1993). Issues not expressly presented to the trial court by written motion, answer, or other response will not be considered on appeal as a grounds for reversal. TEX.R.CIV.P. 166a(c).

### *Analysis*

Here, Hinojos acknowledges he cannot assert a breach of contract claim for failure to pay

5

a covered loss if State Farm proves it timely paid the appraisal award. But he contends genuine issues of material fact exist with respect to the timely payment of the appraisal award and his acceptance of the award. Regarding acceptance, Hinojos contends that because he reserved all rights in law and equity in a letter dated June 10, 2015, he "specifically refused to accept any payment of an appraisal award as settlement of his entire claim," and therefore State Farm cannot show he accepted the award. Because he did not raise this issue before the trial court, however, this portion of his first issue is waived. TEX.R.CIV.P. 166a(c). We note that even if it were not waived, a party may not defeat a contractually binding appraisal award by simply rejecting the payment. *Garcia v. Lloyds*, 514 S.W.3d 257, 272 (Tex.App.—San Antonio 2016, pet. denied)("[Plaintiff] cannot defeat an otherwise valid and binding appraisal award simply by rejecting [Insurer's] payment of the award."); *Brownlow v. United Serv. Auto. Ass'n,* No. 13-03-758-CV, 2005 WL 608252, at *2 (Tex.App.—Corpus Christi Mar. 17, 2005, pet. denied.)(mem. op.)("[Insurer] participated in the appraisal process and tendered the amount awarded by the umpire. Because [Insurer] complied with the requirements of the contract, it cannot be found to be in breach.").

As to the timeliness of the payment under the contract, Hinojos asserts State Farm's only evidence of a timely payment was a transmittal letter, which he summarily contends is insufficient to show timely payment. He cites no case law supporting the contention that this evidence was insufficient for its purpose. He further asserts the clerical errors that delayed his being able to negotiate the payment—the incorrect address and incorrect payee—though uncontested, raise a genuine issue of fact regarding the timeliness of payment. Once again, the challenge for Hinojos is he did not raise the issue of timeliness of payment as a reason to avoid summary judgment on

6

his breach of contract claim.  While he did address timeliness in his response to State Farm's motion, he did so in a separate section asserting a claim distinct from the breach of contract claim addressed in State Farm's motion for summary judgment.  In his reply brief, Hinojos attempts to address this deficiency by pointing to a statement made in the factual background section of his response to the motion for summary judgment, in which he stated, "[a]s of the filing of its motion for summary judgment, State Farm has failed to properly pay the appraisal award."  He asserts that a payment never made is inherently not timely, and thus the issue was properly raised to the trial court.  This argument is unpersuasive.  In filing a written answer or response, the non-movant must expressly present to the trial court any issues defeating the movant's entitlement to summary judgment, and issues not expressly presented to the trial court will not be considered on appeal as a grounds for reversal.  TEX.R.CIV.P. 166a(c); *McConnell*, 858 S.W.2d at 343.  Accordingly, Hinojos's first issue is overruled.

**The Extra-Contractual Claims**

In his second issue, Hinojos contends the trial court improperly granted summary judgment on his extra-contractual claims.  The basis of those claims contend State Farm breached the statutory prohibition against unfair settlement practices and the common-law duty of good faith and fair dealing.  Hinojos maintains the trial court erred because his entitlement to recovery on his extra-contractual claims does not turn on his breach of contract claims.

*Applicable Law*

An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and an insured have mutually agreed.  *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015).  A claim for a breach of insurance contract is distinct and

independent from claims the insurer violated extra-contractual common-law and statutory duties, such as a claim of bad faith. *Liberty Nat'l Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996). Generally, however, an insured may not prevail on a bad faith claim without first showing that the insurer breached the contract. *Id*., (*citing Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)).

The Supreme Court recently brought clarity to this area of insurance law in *USAA Texas Lloyds Company v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). In *Menchaca*, the plaintiff reported storm damage to her insurer, USAA, after Hurricane Ike struck Galveston in 2008. *Id*., at 485. USAA's adjuster found only minimal damage and USAA denied coverage because the estimated costs of repair did not exceed Menchaca's policy's deductible. *Id*. About five months later, at Menchaca's request, USAA sent another adjuster to re-inspect the property, but the adjuster confirmed the first adjuster's findings and USAA again refused to pay benefits under the policy. *Id*. Menchaca sued USAA for breach of the insurance policy and for unfair settlement practices in violation of the Texas Insurance Code, seeking insurance benefits under the policy plus court costs and attorney's fees. *Id*. The case was ultimately tried to a jury. *Id*. Question 1 of the jury charge asked whether USAA failed "to comply with the terms of the insurance policy with respect to the claim for damages filed by [Menchaca] resulting from Hurricane Ike." *Id*. The jury answered that USAA had not failed to comply with the policy. *Id*. Question 2, addressing Menchaca's statutory claims, asked whether USAA had engaged in unfair or deceptive practices, including whether USAA refused "to pay a claim without conducting a reasonable investigation with respect to" the claim. *Id*., at 485-86. The jury answered yes, finding USAA had refused to pay the claim without conducting a reasonable investigation. *Id*., at 486. In Question 3, the jury

8

found USAA had underpaid Menchaca by $11,350.00. *Id*. Based on these three answers, both sides moved for judgment in their favor. *Id*. USAA contended that because in Question 1 the jury found it had not breached its obligations under the policy, Menchaca could not recover for bad faith or extra-contractual liability. *Id*. Menchaca, in turn, argued that because the jury in Question 2 found USAA had refused to pay the claim without conducting a reasonable investigation, as it was required to do under the insurance code, judgment should be entered in her favor. *Id*. The trial court ultimately ignored the jury's answer to Question 1, entered judgment in favor of Menchaca, and the court of appeals affirmed. *Id*.

The Supreme Court granted USAA's petition for review to answer the question of "whether the insured can recover policy benefits based on the insurer's violation of the Texas Insurance Code even though the jury failed to find that the insurer failed to comply with its obligations under the policy." *Menchaca*, 545 S.W.3d at 484. Acknowledging the lack of clarity on these types of claims to date, the Court set forth five distinct but related rules governing the relationship between contractual and extra-contractual claims in the context of insurance:

1. As a general rule, an insured cannot recover policy benefits as damages for an insurer's statutory violation if the policy does not otherwise entitle the insured to receive those benefits.

2. An insured who does establish an entitlement to receive benefits under the insurance policy can recover those benefits as actual damages under the Insurance Code if the insurer's statutory violation is the cause of the loss of benefits.

3. Even if the insured cannot establish a present contractual entitlement to policy benefits, the insured can recover benefits as actual damages under the Insurance Code if the insurer's statutory violation is the reason the insured lost that contractual right.

4. If an insurer's statutory violation causes an injury to the insured that is separate from the loss of policy benefits, the insured may recover damages for that injury

9

even if the policy does not grant the insured a right to benefits.

    5.  An insured cannot recover any damages based on an insurer's statutory violation if the insured did not have a right to receive benefits under the policy or did not sustain an injury independent of a right to benefits.

*Id*., at 489. In applying these rules to Menchaca's case, the Court unanimously agreed the trial court erred by disregarding the jury's answer to Question 1 in which it had found USAA had not breached its obligations under the insurance policy. *Id*., at 504. In reversing the decision of the court of appeals, a majority found the answer to Question 1 created an irreconcilable conflict with the answers to Questions 2 and 3 because Menchaca could not recover policy benefits if USAA did not breach the policy.[1] *Id*., at 506.

### *Analysis*

Here, Hinojos acknowledges the holding in *Menchaca* but attempts to distinguish it by arguing the Supreme Court only held extra-contractual claims to be precluded where the insured was not entitled to coverage under the policy. He contends the Court did not preclude extra-contractual claims where, as here, the insurer was found not to have breached the contract, but the insured *was* entitled to coverage under the policy. We do not find this distinction persuasive. When an insurer has fully paid an appraisal award, no additional benefits are being wrongfully withheld under the policy, and in that situation, the only way an insured can recover any damages beyond policy benefits is where a statutory violation or act of bad faith caused an injury independent of the loss of benefits. *National Security Fire & Casualty Company v. Hurst*, 523 S.W.3d 840, 848 (Tex.App.—Houston [14th Dist.] 2017, pet. filed)(*citing Menchaca*, 545 S.W.3d

---

[1] A plurality of the Court concluded that because the error was not fundamental and neither party properly preserved it, the Court could not reverse on the ground that the jury answers were irreconcilable. *Menchaca*, 545 S.W.3d at 520. The Court ultimately reversed and remanded the case in the interest of justice because of its clarification of the law. *Id*., at 521.

10

at 491). That independent injury, in turn, must be "some act, so extreme, that [it] would cause injury independent of the policy claim." *Menchaca*, 545 S.W.3d at 499 (*quoting Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995)). As the *Menchaca* Court pointed out, in carving out the independent injury rule in *Stoker*, the Court was merely allowing for "the possibility" of that kind of injury and expected they would be rare; indeed, so rare that "we in fact have yet to encounter one." *Id*., at 500. Hinojos has not alleged an independent injury here. Because Hinojos has received the benefits he was entitled to under the policy via the appraisal award and has not alleged any act so extreme as to cause independent injury, he failed to raise an issue of material fact on his statutory and bad faith claims. *Hurst*, 523 S.W.3d at 848. Accordingly, the trial court did not err in granting summary judgment on these claims. Hinojos's second issue is overruled.

## The Texas Prompt Pay Act

In his final issue, Hinojos contends summary judgment was improper on his claim under Section 542.058(a) of the Texas Insurance Code, commonly referred to as the Texas Prompt Pay Act. Specifically, Hinojos asserts the invocation of the appraisal process and the payment of the appraisal award should allow him to receive interest penalties under the statute because the appraisal payment was ultimately paid outside the sixty-day statutory-window. Alternatively, he asserts State Farm never paid the appraisal award.

### *Applicable Law*

The Texas Prompt Pay Act establishes a series of procedural deadlines and requirements that facilitate the timely processing and payment of claims by insurers. Section 542.055(a) of the Act provides that not later than the fifteenth day after an insurer receives notice of a claim, the

11

insurer shall: (1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms the insurer reasonably believes will be required from the claimant. TEX.INS.CODE ANN. § 542.055(a). Within fifteen business days of the insurer receiving all items, statements, and forms from the claimant, the insurer must notify the claimant in writing of the acceptance or rejection of a claim. TEX.INS.CODE ANN. § 542.056(a). To ensure timely processing of payment of claims, Section 542.058(a) requires the insurer to pay a claim within sixty days of receiving all of the items, statements, and forms reasonably requested and required of the claimant or else pay damages as provided by Section 542.060(a). TEX.INS.CODE ANN. § 542.058(a). The damages provided under that section are 18 percent interest on the amount of the claim per year, plus reasonable and necessary attorney's fees. TEX.INS.CODE ANN. § 542.060(a).

In *Breshears*, the plaintiffs were forced to undergo extensive plumbing repairs to their home, totaling $23,735.92. *Breshears*, 155 S.W.3d at 341–42. Their home was insured with a State Farm homeowners policy and they submitted a claim for that amount. *Id*., at 342. State Farm received notice of the claim and began an investigation the following day. *Id*. Two weeks later, State Farm sent the plaintiffs an estimate of $18,742.15 for the work along with a payment for that amount less their deductible. *Id*. The plaintiffs filed suit against State Farm, alleging breach of the insurance contract and violations of the Texas Insurance Code. *Id*. The insurance policy itself provided for appraisal if either party disagreed with the amount of payment. *Id*. The parties began the appraisal process and the appraisers and umpire determined the amount of loss to be $21,484.00. *Id*. State Farm paid the appraisal amount within thirty days, but the plaintiffs continued to pursue their lawsuit to recover the remaining balance between the appraisal award

12

and the cost of their initial repairs. *Id.* State Farm moved for summary judgment and the trial court ordered the plaintiffs take nothing on their claim. *Id.* Among other things, the plaintiffs asserted State Farm violated Article 21.55 of the Texas Insurance Code—the former enactment of the Texas Prompt Pay Act—because State Farm did not pay them within the sixty days required by the statute, thus entitling them to a penalty of 18 percent interest per year on the appraisal amount plus attorney's fees. *Id.*, at 345. This was because, while State Farm had timely paid the plaintiffs the initial estimate of $18,742.15, the time required by the appraisal process meant they were not paid the final amount—the amount determined by the appraisal process—until well outside of the sixty-day statutory limit. *Id.* The court of appeals rejected this argument, holding that the appraisal process was invoked only after State Farm made a reasonable payment on the claim well within the sixty-day limit and therefore did not affect their compliance with the statute. *Id.*

Similarly, after its initial inspection of Hinojos's home, State Farm re-inspected the home on June 28, 2013, at his request and found damage of $3,859.22. It notified Hinojos of its findings on July 5 and sent him a check for the damage on August 7, well within the sixty-day statutory limit. Hinojos disagreed with the amount and filed suit six months later, which lead to the invocation of the policy's appraisal process and ultimately to the larger award he was subsequently tendered. Hinojos urges us to ignore the "good-faith defense" of *Breshears* and to instead "follow other courts that have routinely refused to apply the reasoning of *Breshears*" to claims under the Texas Prompt Pay Act. But none of the cases cited by Hinojos, with the exception of an unpublished opinion of the Northern District of Texas, support his contention that the subsequent larger award from the appraisal process means State Farm did not reasonably pay until after the

13

sixty-day deadline had passed. Further, none of those cases are appraisal cases. As to the single favorable district court opinion cited, *Graber v. State Farm Lloyds*[2], the Fifth Circuit substantially disagreed with it, stating "[t]he most fundamental problem with *Graber* is that it did not recognize an *Erie* court's duty to follow state courts' interpretation of state law rather than the interpretation the federal court thinks makes the most sense[,]" elaborating that *Graber* had improperly relied on a nonappraisal case in rejecting the good faith defense. *Mainali Corporation v. Covington Specialty Insurance Company*, 872 F.3d 255, 259 (5th Cir. 2017). Accordingly, because State Farm made a reasonable payment on Hinojos's claim within the sixty-day statutory limit, the subsequent payment resulting from the appraisal process did not mean State Farm violated the prompt payment deadlines of the insurance code. *Breshears*, 155 S.W.3d at 345. The trial court properly awarded summary judgment to State Farm on Hinojos's claim for violations of Chapter 542 of the Texas Insurance Code. Hinojos's third issue is overruled.

## CONCLUSION

Having overruled Issues One through Three, the judgment of the trial court is affirmed.


January 18, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

---

[2] No. 3:13–CV–2671–B, 2015 WL 3755030, at *10 (N.D. Tex. June 15, 2015)(mem. op. and order).

14