

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-23-00041-CV

———————————————

DONALD STEWART, Appellant

V.

TEXAS FARMERS INSURANCE COMPANY, Appellee

On Appeal from the 48th District Court
Tarrant County, Texas
Trial Court No. 048-000002-16

Before Sudderth, C.J.; Birdwell and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

Appellant Donald Stewart had homeowner's insurance through Appellee Texas Farmers Insurance Company, and he alleges that Farmers undervalued the amount of storm damage done to his house. He filed suit against Farmers for breach of contract and related causes of action, then he invoked the appraisal clause of his insurance policy to resolve the disputed value of his loss. The appraisal panel—consisting of Stewart's appraiser, Farmers' appraiser, and an umpire—approved an appraisal award below Stewart's deductible, leaving Stewart with no contract damages, and thus undermining Stewart's ability to recover from Farmers. Stewart moved to set aside the award, but the trial court denied the motion and instead granted summary judgment in favor of Farmers. Stewart appeals this judgment, arguing that the appraisal award should have been set aside because (1) the appraisal panel—specifically, the umpire—exceeded its authority; (2) the award was based on a mistake; and (3) the award was based on fraud. Because Stewart presented no evidence to support his first and second arguments, and because he failed to preserve his third, we will affirm.

## I. Background

Stewart had homeowner's insurance through Farmers, and in March 2016, a storm damaged his house. Farmers' adjuster estimated that the amount of damage covered by Stewart's policy was below his $1,995 deductible, but Stewart disagreed.

He sued Farmers (and its adjuster)[1] for breach of contract, breach of the duty of good faith and fair dealing, and violations of the Texas Insurance Code.

## A. Appraisal Panel's Award

Stewart subsequently invoked the appraisal provision of his insurance contract, and under that provision, he and Farmers each appointed an appraiser to resolve the value of his loss. But Stewart's and Farmers' appraisers could not agree on the value of the loss, so in accordance with the contractual appraisal provision, the American Arbitration Association appointed an umpire to round out the now-three-member appraisal panel. The umpire issued an appraisal that was higher than Farmers' original estimate but still below Stewart's deductible,[2] and Farmers' appraiser signed off on this, making it the appraisal award of the panel as a whole.

## B. Farmers' Motion for Summary Judgment

Farmers moved for summary judgment on traditional and no-evidence grounds challenging, among other things, the damages element of Stewart's claims.[3] Farmers argued that because the appraisal award was below Stewart's deductible, Farmers was

---

[1]Several months before the summary judgment order, Farmers moved to accept liability for the adjuster's claim-related acts or omissions, and Stewart's causes of action against the adjuster were dismissed with prejudice.

[2]The appraisal award included three line items: "[r]oofing repair," "[d]ownspout," and "[g]utter labor."

[3]Farmers also moved for no-evidence summary judgment on the breach element of Stewart's contract claim. We affirm the trial court's judgment on the damages element, though, so we need not address breach. *See* Tex. R. App. P. 47.1.

not required to pay Stewart anything under the policy, and Stewart thus had no damages on his breach of contract claim.[4]  Plus, since Stewart had not identified any extracontractual damages, Farmers alleged that the absence of contract damages undermined Stewart's remaining causes of action as well.

## C.    Stewart's Response and Evidence

Stewart responded by moving to set aside the appraisal award because, he alleged, (1) the umpire did not personally inspect the property, and (2) the umpire considered information regarding prior damage to the house, thereby resolving a coverage issue that was reserved for the court.[5]

Stewart supported his summary judgment response with a copy of the one-page appraisal award and a post-award affidavit from his appraiser.[6]  In the post-award affidavit, Stewart's appraiser confirmed that the umpire "never inspected Mr.

---

[4]Farmers supported its traditional summary judgment motion with (1) an affidavit summarizing the timeline of Stewart's claim and authenticating Farmers' business records; (2) a copy of Stewart's homeowner's insurance policy; (3) a copy of Farmers' initial estimate of Stewart's claim; and (4) a copy of the appraisal award.

[5]Stewart primarily took issue with the appraisal panel's assessment of his roof damage; he argued that the roof was "no longer repairable" so Farmers was required to pay for a full replacement.

[6]Stewart also supported his response and motion with other documents that predated the umpire's appointment:  (1) a mediation impasse statement issued before the appraisal process; (2) Stewart's letter invoking the appraisal process; and (3) Farmers' letter at the beginning of the appraisal process, outlining the policy's appraisal provisions.  The last item, Farmers' letter, was accompanied by numerous photographs and claim-related documents.

4

Stewart's residence," and he averred that when he had asked the umpire "how he was able to make his award without inspect[ing] the Property[, the umpire had] refused to explain."

Accompanying the appraiser's affidavit were copies of email exchanges between the members of the appraisal panel, i.e., Stewart's appraiser, Farmers' appraiser, and the umpire. In one of those email exchanges—the exchange most relevant to this appeal—Farmers' appraiser sent attachments to the panel, and in the one-sentence email that accompanied the attachments, Farmers' appraiser described the files as providing "additional information regarding the interior damage which was addressed back in 2007." Stewart did not include the attachments with his summary judgment response, though. So apart from Farmers' appraiser's one-sentence description of the attachments, all that is known about them is that they provoked a response from Stewart's appraiser, who expressed his "concern[]" that the attachments were "simply the regurgitation of material provided by the carrier during their evaluation of the claim." Stewart's appraiser urged the umpire to "impartially review and evaluate the value of the loss, prior claim findings notwithstanding." The umpire acknowledged seeing the emails and stated that he "appreciate[d] the points of view of both panel members," but he did not comment on the attachments, and his thoughts on them are not captured in the record.

Stewart offered no other evidence regarding the umpire's thought process in deciding upon the appraisal award.

5

## D. Trial Court's Judgment

The trial court denied Stewart's motion to set aside the appraisal award, and it granted summary judgment for Farmers.[7] Stewart challenges these decisions on appeal.

## II. Standard of Review

We review a summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant and indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 811 (Tex. 2019); *Kester v. State Farm Lloyds*, No. 02-22-00267-CV, 2023 WL 4359790, at *3 (Tex. App.—Fort Worth July 6, 2023, no pet.). When, as here, a defendant moves for summary judgment on both traditional and no-evidence grounds, we consider the no-evidence grounds first. *KMS Retail Rowlett, LP v. City of Rowlett*, 593 S.W.3d 175, 181 (Tex. 2019).

To defeat a no-evidence motion for summary judgment, the nonmovant must produce at least a scintilla of evidence raising a genuine issue of material fact on the challenged element of his claims. *Id.; see* Tex. R. Civ. P. 166a(i). The challenged

---

[7]Stewart's case is a tag-along case to multi-district litigation against Farmers, and the case was transferred to a pretrial court pursuant to Rule of Judicial Administration 13.5. Tex. R. Jud. Admin. 13.5; *see* Tex. R. Jud. Admin. 13.2(g) (defining "[t]ag-along case"). The pretrial court entered the summary judgment from which Stewart appeals. *See* Tex. R. Jud. Admin. 13.6(b) (recognizing pretrial court's authority to rule on motion for summary judgment).

element in this case is Stewart's damages. And those damages are predicated upon an above-deductible valuation of Stewart's loss from the 2016 storm.

### III. The Law on Appraisal Awards

Appraisal provisions in insurance contracts provide a means to resolve disputes about the amount of an insured's loss. *In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 406–07 (Tex. 2011) (orig. proceeding). An appraisal provision "binds the parties to have the extent or amount of the loss determined in a particular way," and the resulting appraisal award "estop[s] one party from contesting the issue of the value of damages in a suit on the insurance contract." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 895 (Tex. 2009) (quoting *In re Allstate Cnty. Mut. Ins. Co.*, 85 S.W.3d 193, 195 (Tex. 2002) (orig. proceeding)); *Tippett v. Safeco Ins. Co. of Ind.*, No. 02-19-00152-CV, 2020 WL 827143, at *4 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (mem. op.) (quoting *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 253 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.)).

Stewart does not dispute that the appraisal award—by valuing his loss at an amount below his deductible—undermines the damages element of his claims.[8] He instead argues that the appraisal award should have been set aside.

---

[8]Stewart disputed this in the trial court; he argued that even if the appraisal award undermined the damages for breach of contract, the appraisal award did not undermine the damages for his other claims. He does not raise this argument on appeal.

An appraisal award made pursuant to the terms of an insurance contract will not be set aside unless it was made without authority or as the result of fraud, accident, or mistake. *Tippett*, 2020 WL 827143, at \*5; *Zhu v. First Cmty. Ins. Co.*, 543 S.W.3d 428, 433 (Tex. App.—Houston [14th Dist.] 2018, pet. dism'd); *see Universal Underwriters*, 345 S.W.3d at 406–07. "Every reasonable presumption will be indulged to sustain an appraisal award, and the burden of proof lies on the party seeking to avoid the award."[9] *Barnes v. W. All. Ins. Co.*, 844 S.W.2d 264, 267 (Tex. App.—Fort Worth 1992, writ dism'd by agr.); *see Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 844 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Franco v. Slavonic Mut. Fire Ins. Ass'n*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.). We will not "reverse [a] summary judgment on a ground for setting aside the appraisal award unless (1) the nonmovant [i.e., Stewart] raised that ground in response to the motion and (2) the summary[ ]judgment evidence raises a fact issue as to that ground." *Zhu*, 543 S.W.3d at 433.

## IV. Discussion

Stewart argues that the trial court erred by failing to set aside the appraisal award and by entering summary judgment on that basis because (1) the appraisal panel exceeded its authority by making a coverage determination reserved for the trial court;

---

[9]When reviewing a summary judgment that enforces an appraisal award, the presumptions favoring the appraisal award will "yield to the degree [they] conflict[] with the presumptions required to be made in favor of a nonmovant." *Tippett*, 2020 WL 827143, at \*5.

8

(2) the award stemmed from the umpire's mistaken reliance on unverified information because he failed to personally inspect Stewart's home; and (3) the award was based on fraud in that Farmers' appraiser fraudulently misrepresented the damage to Stewart's home and the umpire believed her.[10]

## A. Exceeded authority

First, Stewart contends that the appraisal panel—specifically, the umpire—exceeded its authority by making a coverage determination "that was solely within the province of the [trial c]ourt." *See generally Johnson*, 290 S.W.3d at 890 (summarizing that "the scope of appraisal is damages, not liability"). He asserts that when Farmers' appraiser provided information on "the old damage" from 2007, she was "represent[ing the old damage] as the same as current damages" and the umpire's receipt of this information reflects that the umpire resolved a causation issue which, in Stewart's view, was "a coverage question reserved for the Courts."[11] *See id.* at 891–93 (noting that "[c]ausation relates to both liability and damages" and may be a question for the appraiser or the court, depending on the facts and circumstances). This

---

[10]Stewart's three issues are reordered for organizational purposes.

[11]Stewart characterizes the causation determination as a "question . . . of different causes," which was reserved for the court, while Farmers characterizes the causation determination as a question of the property's preexisting condition, which was within the appraiser's authority. *See Johnson*, 290 S.W.3d at 891–93. Because Stewart did not raise a fact issue as to whether the umpire even made the causation determination, though, we need not decide the determination's classification. *See* Tex. R. App. P. 47.1.

argument fails for multiple reasons, not the least of which is that there is no evidence the umpire made the alleged causation determination.[12]

The summary judgment evidence shows that Farmers' appraiser emailed the appraisal panel attachments containing what she described as "additional information regarding the interior damage which was addressed back in 2007." Stewart asks us to read into this one-sentence email that Farmers' appraiser sent the "additional information" to convince the umpire that the interior damage was not caused by the 2016 storm, that Farmers' appraiser was successful in so convincing the umpire, and that the umpire altered the appraisal award as a result of this causation determination.[13] But this is speculation.

---

[12]Another reason is that Stewart did not adequately brief the issue. Texas Rule of Appellate Procedure 38.1(i) requires an appellant's brief to "contain a clear and concise argument . . . with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). "Failure to provide citation to the record or citations for legal references constitutes inadequate briefing and waiver." *NexPoint Advisors, L.P. v. United Dev. Funding IV*, No. 02-22-00427-CV, 2023 WL 4941977, at *5–6 (Tex. App.—Fort Worth Aug. 3, 2023, no pet. h.) (holding appellant waived argument when brief contained "only conclusory 'factual' statements . . . with little or no record references and no meaningful analysis of error"). Here, Stewart asserts that the umpire exceeded his authority, but the portion of his brief addressing this issue contains no legal or record citations. We have no duty to brief the issue for him or to search the record for evidence favorable to his position. *Id.* at *5.

[13]Stewart does not identify how the alleged causation determination altered the appraisal award; he merely asserts that because the causation determination was, in his view, reserved for the trial court, the umpire's making it "necessitates setting aside the appraisal award."

There is no evidence of the nature or substance of the "additional information,"[14] no evidence of Farmers' appraiser's motive for providing the "additional information," no evidence of what the "additional information" was supplementing, no evidence of what the umpire thought about the "additional information," no evidence of whether the umpire relied upon it, and no evidence that it influenced the appraisal award in any manner. The umpire's receipt of an email with attachments regarding "interior damage . . . addressed back in 2007" does not show or imply that the umpire made a specific causation decision regarding what caused the damage to Stewart's house and whether it was covered by Stewart's policy.

On top of that, the appraisal award disavows any implied coverage determinations: the award states that it "is intended to address valuation of costs only and should not be interpreted or used as an award or opinion regarding coverage under the policy and no such award or opinion should be implied or is intended."[15] [Emphasis removed.] This uncontradicted and unequivocal disavowal solidifies the lack of evidence that the umpire made the alleged determination.

We overrule this issue.

---

[14]Stewart's references to the email attachments imply that they included photographs. But this says nothing about what the photographs showed or whether other photographs or documents were included.

[15]This disavowal was corroborated in an affidavit from Farmers' appraiser that was filed in response to Stewart's motion to set aside the appraisal award. In that affidavit, Farmers' appraiser averred that "[t]he [a]ppraisal [a]ward addressed valuation of costs only and was not an opinion regarding coverage under the [p]olicy."

11

**B. Mistake**

Next, Stewart asserts that the umpire's failure to personally inspect his house was evidence that the umpire "mistakenly assum[ed] that the damages [Stewart] presented were the same as those he suffered more than ten years prior."[16] Again, this is speculation.

The umpire's decision not to personally inspect Stewart's house is no evidence that he assumed anything in particular regarding the damages to that house. Plus, "[t]here is no explicit requirement that the appraisers and umpire inspect the property . . . , and many do not." *Johnson*, 290 S.W.3d at 890 n.23; *Tippett*, 2020 WL 827143, at *11 n.11 (quoting *Johnson*).

Apart from the umpire's decision not to personally inspect the house, Stewart has not pointed to any other evidence that the umpire made mistaken assumptions about the value of the storm damage. We therefore overrule this issue.

**C. Fraud**

In his final argument, Stewart asserts that "[t]he [appraisal a]ward was procured by fraud when [Farmers'] appraiser introduced photographs from a decade-old claim and asserted the damages were the same as [Stewart's] recent damage." But even if

---

[16]Stewart does not cite to the record or clarify what decade-old damages he is referencing, but he appears to be alluding to the "interior damage . . . addressed back in 2007," for which Farmers' appraiser provided the "additional information" already discussed.

there was evidence that Farmers' appraiser made this representation—which, as we have already discussed, there is not—Stewart did not preserve this argument.

"[A]n appellate court may not reverse [a] summary judgment on a ground for setting aside the appraisal award unless . . . the nonmovant raised that ground in response to the motion." *Zhu*, 543 S.W.3d at 433; *see* Tex. R. App. P. 33.1(a); Tex. R. Civ. P. 166a(c) ("Issues not expressly presented to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal."). Stewart made no allegation of fraud when he challenged the appraisal award in the trial court. He did not raise it in his response to Farmers' summary judgment motion, and he did not raise it in his motion to set aside the appraisal award. Therefore, the issue is not preserved for our review. *See Zhu*, 543 S.W.3d at 434 (noting that insured "had the burden of raising a ground for setting aside the appraisal award in response to [the insurer's] summary[ ]judgment motion"); *Franco*, 154 S.W.3d at 785–86 (declining to consider ground for setting aside appraisal award when the ground was not raised in trial court); *see also City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678 (Tex. 1979) (noting that "the non-movant may not urge on appeal as reason for reversal of the summary judgment any and every *new* ground that he can think of, nor can he resurrect grounds that he abandoned at the hearing").

We overrule this issue.

## V. Conclusion

Having overruled Stewart's three issues, we affirm the trial court's summary judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered: September 28, 2023